UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CASTRO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF UNION CITY, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-00272-MEJ<br><br>**ORDER RE: MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 59 |

## INTRODUCTION

Pending before the Court is Plaintiff Gary Castro's Motion for Leave to File Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). Dkt. No. 59. Defendants City of Union City ("Union City"), Chief of Police Brian Foley, and Officer Christopher Figueiredo (collectively "Defendants") filed an Opposition (Dkt. No. 63), and Plaintiff filed a Reply (Dkt. No. 66). The Court finds this matter suitable for disposition without oral argument and VACATES the July 2, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for the reasons set forth below.

## BACKGROUND

**A.    Factual Background**

Plaintiff worked as a maintenance man for a multi-townhouse community in Union City. First Am. Compl. ("FAC") ¶ 21, Dkt. No. 50. He is also a resident of the townhouse community. *Id.* On February 4, 2013, Plaintiff observed a man scavenging through the community's trash container and dumping garbage on the ground while looking for recyclables. *Id.* ¶ 22. He recognized the man as Sau Nguyen, a repeated trespasser, and requested that he leave the property.

*Id.* Nguyen grabbed his bag and ran away. *Id.* ¶ 23. Plaintiff and another resident searched the property and found Nguyen lying on the ground. *Id.* The second resident took the bag of recyclables and left the area. *Id.* ¶ 24. Plaintiff noticed Nguyen seemed visibly upset. *Id.* Nguyen got up and ran toward Plaintiff, with a bloody thumb extended out in front of him. *Id.* ¶ 25. Nguyen charged at full speed into his midsection, causing Plaintiff to fall backward onto the pavement. *Id.* ¶ 26. Nguyen lunged after Plaintiff a second time, but Plaintiff lifted his foot, causing Nguyen to stumble backwards on the grass. *Id.* ¶ 27.

When police arrived at the scene, Plaintiff approached the nearest officer, introduced himself as the maintenance man of the property, and explained that Nguyen had attacked and seriously injured him. *Id.* ¶ 29. Although he requested that the officer arrest Nguyen, Plaintiff was grabbed by his jacket, placed over the trunk of a patrol car, and placed in handcuffs. *Id.* Plaintiff alleges that the police refused to gather evidence, including the bag of recyclables, clothing, photos, and blood that Nguyen wiped on a nearby apartment door, and ignored residents' statements that they witnessed Nguyen assault Plaintiff. *Id.* ¶¶ 30-31.

Defendant Figueiredo transported Plaintiff to the Union City Police Department for questioning, at which time Plaintiff asserted his Fifth Amendment right to remain silent. *Id.* ¶¶ 32-33. While at the police department, Plaintiff requested emergency medical attention to attend to his injured tailbone and elbow, which he sustained when Nguyen knocked him down to the ground. *Id.* ¶ 34. Plaintiff informed Officer Figueiredo that he was in severe pain. *Id.* ¶ 35. Although Officer Figueiredo photographed Plaintiff's right elbow, he refused to look at or photograph Plaintiff's tailbone. *Id.* ¶ 36. An ambulance was summoned, and Plaintiff was taken to Washington Hospital, where he was treated for his injuries and then released back to Officer Figueiredo's custody. *Id.* ¶ 37.

Officer Figueiredo transported Plaintiff to the Fremont jail for booking, where Plaintiff made unsolicited statements at the jail that he was "just doing his job keeping trespassers off the property and he was only acting in self-defense." *Id.* ¶ 38. Plaintiff again asserted his Fifth Amendment rights and invoked his right to counsel. *Id.* ¶ 40. The Fremont jail declined to accept Plaintiff because of his medical condition during the booking process. *Id.* ¶ 41. During this time,

Plaintiff's medical condition escalated to the extent that he was hyperventilating and was having trouble breathing. *Id.* ¶ 42. An ambulance was called to transport Plaintiff back to Washington Hospital, where he received additional medical care in the emergency room. *Id.* ¶ 43. Plaintiff alleges that Officer Figueiredo "reported that hospital staff had stated that despite Plaintiff's 'now catatonic behavior and hyperventilating, nothing appeared to be wrong with him,' at which time, Plaintiff was released back to the custody of the police officer." *Id.* ¶ 44.

Officer Figueiredo told Plaintiff that it was time to leave, but Plaintiff could not move or get off the hospital gurney because he was still experiencing medical problems. *Id.* ¶ 45. Officer Figueiredo then picked Plaintiff up off of the gurney, carried and dragged him half way down the hospital hallway, and dropped Plaintiff because he could not drag him any further. *Id.* ¶ 46. Officer Figueiredo got a wheelchair, picked Plaintiff up off the ground, forcefully tossed him into the wheelchair, then wheeled Plaintiff out to his patrol car. *Id.* ¶¶ 47-48. Officer Figueiredo pulled the wheelchair out from under Plaintiff, picked him up off of his knees, dropped him, and then forcefully manipulated Plaintiff's body to get him inside of the back seat of his police vehicle. *Id.* ¶ 48. After Plaintiff complained that he needed more space, Officer Figueiredo and other unnamed officers placed him in a leather body wrap while he was still handcuffed, making the body restraint as tight as possible, with a fully enclosed helmet, to strap Plaintiff's head to his knees, which cut off Plaintiff's oxygen supply "to the extent that Plaintiff couldn't breathe." *Id.* ¶ 50. "Plaintiff thought the officers were purposely trying to suffocate him and that he was going to die in police custody." *Id.* ¶ 51. Officer Figueiredo and the other officers leaned against the patrol car "drinking beverages, laughing, waiving, and taunting Plaintiff, as his helmet began to fog up, just like a zoo animal in a cage on display for the officer's entertainment, and even after Plaintiff was begging and pleading with the officers for relief." *Id.* ¶ 52.

While Plaintiff was restrained in the back seat without a seat belt, Officer Figueiredo drove at speeds in excess of 70 miles per hour, crossing over the center divider and weaving back and forth, causing Plaintiff to repeatedly bounce from side to side and slam against the doors of the police car. *Id.* ¶ 53. Officer Figueiredo's driving caused Plaintiff to go in and out of consciousness and suffer excruciating pain and injuries. *Id.* ¶ 54.

Plaintiff was transported to Santa Rita County Jail, where Officer Figueiredo dragged him out of the car and dropped him on his tailbone. *Id.* ¶ 55. Officer Figueiredo and five other officers picked Plaintiff up by the leather handles of the body wrap and "willfully" dropped him two more times on his injured tailbone. *Id.* ¶ 57. Once inside the jail, Plaintiff was placed in a holding cell, after which one of the officers forcefully kicked Plaintiff in the groin. *Id.* ¶ 58. Plaintiff laid motionless on his stomach, on the concrete floor, for nine hours. *Id.*

Around February 6, 2013, the Alameda County District Attorney filed a complaint against Plaintiff, charging him with felony battery, elder abuse, delaying an executive officer by means of threats and violence, and resisting arrest. *Id.* ¶ 59. On February 17, 2015, the District Attorney's Office dismissed the complaint. *Id.* ¶ 62.

**B.  Procedural Background**

On July 2, 2013, Plaintiff submitted an administrative tort claim against Union City, based on his arrest and hospital treatment on February 4, 2013. Allen Decl., Ex. A, Dkt. No. 64.

On January 16, 2014, Plaintiff filed his initial Complaint in this case, alleging ten causes of action: (1) unlawful trespass; (2) Fourth Amendment unlawful arrest; (3) unlawful seizure resulting in violation of Due Process/Equal Protection under the Fifth, Eighth, and Fourteenth Amendments; (4) excessive force under the Fifth, Eighth, and Fourteenth Amendments; (5) excessive force under the Fifth, Eighth, and Fourteenth Amendments; (6) Due Process/Equal Protection under the Fourteenth Amendment; (7) Equal Protection under the Fourteenth Amendment; (8) state-law inadequate training; (9) state-law failure to enforce law; and (10) false arrest under the Fourteenth Amendment. Compl. ¶¶ 49-79, Dkt. No. 1. Plaintiff alleged the first cause of action against Nguyen; he alleged the second through tenth causes of action against Union City, the Union City Police Department, Chief Foley, and Officer Figueiredo. Plaintiff also named as Defendants Massingham & Associates (Plaintiff's employer) and Cathy Mount (Plaintiff's supervisor), but he did not name them in any of causes of action. *See* Compl. ¶¶ 8-9.

On April 25, 2014, Defendants filed a Motion to Dismiss. Dkt. No. 20. On August 14, 2014, the Court granted in part and denied in part Defendants' motion. Order, Dkt. No. 41. The Court granted Defendants' motion as to the Union City Police Department, finding that Plaintiff's

claims were rather properly brought against Union City. *Id.* at 8. As to Plaintiff's claims against Union City, the Court found that it may not be held vicariously liable for any alleged unlawful arrest, excessive use of force, or any other alleged unconstitutional act against Plaintiff, and therefore granted Defendants' motion as to Plaintiff's Second (unlawful arrest), Third (Due Process/Equal Protection), Fourth (excessive force), Fifth (excessive force), Sixth (equal protection/due process), Seventh (equal protection), and Tenth (Due Process/Equal Protection) causes of action under 42 U.S.C. § 1983 against Union City without leave to amend. *Id.* at 9. As to Chief Foley, although he was named in the Complaint, the Court noted that Plaintiff failed to include factual allegations specific to him, and therefore granted leave to allege culpable action or inaction against Chief Foley in his individual capacity.[1] *Id.* at 11.

As to Plaintiff's third cause of action, the Court dismissed his Fifth Amendment claim without leave to amend, as the Fifth Amendment only applies to federal officers. *Id.* (citing *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) ("Bingue first argues that Prunchak's actions run afoul of the Fifth Amendment. This claim is plainly foreclosed by the Constitution. Prunchak is a local law enforcement official, and the Fifth Amendment's due process clause only applies to the federal government.") (citations and quotations omitted)). The Court dismissed Plaintiff's Eighth Amendment claim without leave to amend as the Eighth Amendment only applies post-conviction. *Id.* at 12 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). As to Plaintiff's Fourteenth Amendment Due Process claims, the Court dismissed them without leave to amend, as claims of arrest and detention without probable cause are properly brought under the Fourth Amendment. *Id.* at 13-14 (citing *Albright v. Oliver*, 510 U.S. 266, 270 n.4 (1994); *Podesta v. City of San Leandro*, 2005 WL 2333802, at *4 (N.D. Cal. Sep. 21, 2005) (finding that where the "gravamen of [plaintiff's]

---

[1] The Court dismissed any claims against Chief Foley in his official capacity, finding that any such claims were properly brought against Union City. *Id.* at 9-10 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002) ("Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded.")).

5

Complaint is that he was subjected to an unreasonable search and seizure and possibly excessive force," § 1983 claims were properly brought under the Fourth Amendment rather than the Fourteenth Amendment); *Cannon v. City of Petaluma*, 2012 WL 1183732, at *12 (N.D. Cal. Apr. 6, 2012)). The Court also dismissed Plaintiff's Fourteenth Amendment Equal Protection claim. *Id.* at 14 (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012)). However, the Court granted leave to amend if Plaintiff could "allege specific facts as to each defendant, showing that the defendant engaged in discriminatory or harassing conduct, that the conduct was intentional, and that the conduct was motivated by considerations of Plaintiff's membership in a protected class," and "that there were similarly-situated individuals not in his protected class who were treated more favorably." *Id.* at 14-15.

As to Plaintiff's Fourth Cause of Action, the Court again dismissed his Fifth and Eighth Amendment claims without leave to amend, finding that they failed as a matter of law. *Id.* at 15. The Court dismissed Plaintiff's Fourteenth Amendment excessive force claim, but granted leave to re-plead this claim under the Fourth Amendment. *Id.* As to Plaintiff's false police report allegation, the Court granted leave to amend this claim as one for substantive due process under the Fourteenth Amendment, noting that "the Ninth Circuit has recognized "a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.'" *Id.* (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001)). The Court warned Plaintiff that he must point to evidence that "'Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.'" *Id.* (quoting *Devereaux*, 263 F.3d at 1076).

As to Plaintiff's Fifth Cause of Action, the Court again dismissed his Fifth and Eighth Amendment claims without leave to amend, finding that they failed as a matter of law. *Id.* at 16. As to Plaintiff's excessive force claim under the Fourteenth Amendment, the Court found that it was properly analyzed under the Fourth Amendment and therefore granted leave to amend. *Id.*

6

1    (citing *Graham*, 490 U.S. at 395).

2         As to Plaintiff's Sixth Cause of Action, the Court dismissed it in its entirety, finding it
3    duplicative of Plaintiff's other claims and that Plaintiff failed to allege any supporting factual
4    allegations. *Id.*

5         In his Seventh Cause of Action, Plaintiff alleged a violation of the Fourteenth Amendment
6    right to Equal Protection based on Defendants' alleged refusal to: (1) take statements from him
7    and other witnesses; (2) gather evidence; (3) accept Plaintiff's request that he wanted to place the
8    trespasser under citizen's arrest; (4) allow Plaintiff to file a criminal complaint against the
9    trespasser; and (5) investigate Plaintiff's initial complaint of the incident. Compl. ¶ 73. Based on
10   Plaintiff's failure to allege facts showing that a particular Defendant or Defendants treated him
11   differently from others similarly situated, the Court dismissed Plaintiff's Equal Protection claim
12   with leave to amend. Order at 16-17. To the extent that Plaintiff's Complaint included allegations
13   that Defendants failed to investigate and respond to Plaintiff's request to arrest Nguyen, the Court
14   dismissed such claims without leave to amend, finding that Officer Figueiredo had no duty to act,
15   *id.* at 17 (citing *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 279 (1998); *Tennison v. City &*
16   *Cnty. of San Francisco*, 2006 WL 733470, at *24 (N.D. Cal. Mar. 22, 2006)), and that the City
17   could therefore not be held vicariously liable, *id.* at 17-18 (citing Cal. Gov't Code § 815.2(a)).

18        As to Plaintiff's Eighth Cause of Action, the Court found that Plaintiff stated a proper
19   claim for negligence against Officer Figueiredo, and therefore denied Defendants' Motion on this
20   ground. *Id.* at 18-19. As California Government Code section 815.2(a) provides that a
21   governmental agency may be held vicariously liable for the torts of its employees acting within the
22   scope of their employment, the Court also denied Defendants' motion as to the City's vicarious
23   liability. *Id.* at 20. However, because Plaintiff failed to allege a sufficient basis for finding Union
24   City directly liable under California law, and California courts of appeal have held that no
25   statutory basis exists for a claim of direct liability based on a public entity's negligent hiring,
26   policymaking, and supervision, the Court dismissed his claim for direct liability against the City
27   without leave to amend. *Id.* at 19 (citing *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175,
28   1183 (2003); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004), *opinion modified*

1    *on denial of reh'g* (Aug. 17, 2004), *disapproved of by Hayes v. Cnty. of San Diego*, 57 Cal. 4th

2    622 (2013); *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 252-53 (2007)).  The Court

3    also dismissed without leave to amend Plaintiff's claim against Chief Foley, finding that police

4    chiefs are immune from direct common law claims of negligence. *Id.* at 20 (citing *Manning v.*

5    *City of Rohnert Park*, 2006 WL 3591149, at *8 (N.D. Cal. Dec. 11, 2006)).

6          As to Plaintiff's Ninth Cause of Action, the Court dismissed Plaintiff's claims without

7    leave to amend, finding that Defendants are entitled to immunity under California Government

8    Code sections 821 and 846 for any claim that they are liable for injuries as a result of Officer

9    Figueiredo's failure to arrest Nguyen. *Id.* at 21.

10         Finally, as to Plaintiff's Tenth Cause of Action for false arrest under the Fourteenth

11   Amendment, the Court dismissed it without leave to amend, as there can be no liability against

12   Union City and Chief Foley based on unlawful arrest, and any unlawful arrest claim against

13   Officer Figueiredo falls within the Fourth Amendment, which Plaintiff had already plead. *Id.*

14         In the meantime, as Plaintiff had not filed proof of service of the summons and complaint

15   upon Sau Nguyen, Massingham & Associates, and Cathy Mount, the Court ordered Plaintiff to

16   show cause why his claims against these three defendants should not be dismissed for failure to

17   serve within the time required by Rule 4(m).  Dkt. No. 27.  In his response, Plaintiff

18   acknowledged he had not served Nguyen, Massingham, or Mount, but argued he should be

19   afforded additional time to do so.  Dkt. No. 29.  The Court found that Plaintiff failed to show good

20   cause or excusable neglect for his failure to serve the Defendants in a timely manner and

21   dismissed his claims against Nguyen, Massingham, and Mount without prejudice to Plaintiff's

22   refiling his claims against them in a separate action or actions.  Dkt. No. 30.

23         On April 2, 2015, Plaintiff filed his FAC.  Once again, it included ten causes of action: (1)

24   Fourth Amendment claim under 42 U.S.C. § 1983 for unlawful seizure and excessive force against

25   Officer Figueiredo; (2) First, Fourth, and Fifth Amendment retaliation claims under § 1983 against

26   Officer Figueiredo; (3) municipal and supervisor liability under § 1983 against Union City and

27   Chief Foley; (4) violation of California Civil Code section 52.1 against Union City and Officer

28   Figueiredo; (5) violation of California Civil Code section 51.7 against Union City and Officer

8

1  Figueiredo; (6) intentional infliction of emotional distress ("IIED") against Union City and Officer
2  Figueiredo; (7) malicious prosecution against Union City and Officer Figueiredo; (8) negligence
3  against Officer Figueiredo; (9) substantive due process under § 1983 for deliberately fabricating
4  false evidence against Union City and Officer Figueiredo; and (10) injunctive relief against all
5  Defendants.  FAC ¶¶ 63-130.

6  On April 16, 2015, Defendants filed a Motion to Dismiss the FAC.  Dkt. No. 52.
7  However, the parties subsequently filed a stipulated request, which the Court granted, dismissing
8  all new causes of action in the FAC that did not appear in Plaintiff's original Complaint and
9  granting him permission to file a motion under Federal Rule of Civil Procedure 15(a) seeking
10 leave to amend his FAC to add the new claims.  Dkt. Nos. 55, 56.  In a separate Case Management
11 Order, the Court set a deadline of May 25, 2015 for Plaintiff to seek leave to amend.  Dkt. No. 58.

12 On May 25, 2015, Plaintiff filed the present Motion for Leave to File Second Amended
13 Complaint.  Plaintiff maintains that the new claims, which are the same as those in his FAC, arise
14 from the same operative facts as those in his original Complaint.  Mot. at 2-3.

15 **LEGAL STANDARD**

16 Rule 15 provides that a party may amend its pleading once as a matter of course within (1)
17 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive
18 pleading or service of a Rule 12(b) motion.  Fed. R. Civ. P. 15(a)(1).  Outside of this timeframe,
19 "a party may amend its pleading only with the opposing party's written consent or the court's
20 leave," though the court "should freely give leave when justice so requires."  Fed. R. Civ. P.
21 15(a)(2).  "Although the rule should be interpreted with 'extreme liberality,' leave to amend is not
22 to be granted automatically."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)
23 (citation omitted).

24 A court considers five factors in determining whether to grant leave to amend: "(1) bad
25 faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5)
26 whether plaintiff has previously amended his complaint."  *In re Western States Wholesale Nat.*
27 *Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted), *aff'd on other ground*
28 *sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015).  "Prejudice to the opposing party is

United States District Court
Northern District of California

the most important factor." *Jackson*, 902 F.2d at 1387.

## DISCUSSION

### A. Bad Faith

Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early. *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995). Defendants do not argue that Plaintiffs seek to amend in bad faith, and there is no indication in the record of a bad faith purpose for Plaintiff's desire to amend. The Court therefore finds that Plaintiff's Motion is not motivated by bad faith.

### B. Undue Delay

As noted above, Plaintiff seeks to allege new causes of action for First and Fifth Amendment retaliation, municipal liability, California Civil Code sections 51.7 and 52.1, IIED, and malicious prosecution. Defendants argue that Plaintiff's request is untimely because the facts behind Plaintiff's section 51.7, section 52.1, and IIED claims were known to him since the time of the February 4, 2013 incident, and he provides no explanation for waiting more than two years after the incident (and approximately 18 months after filing his original Complaint) to allege these causes of action. Opp'n at 3. As to Plaintiff's retaliation claims, Defendants argue that he knew since at least the time of his tort claim submission (July 2013) that he believed Officer Figueiredo retaliated against him, yet his motion provides no explanation for why he waited nearly two years after incident to allege a retaliation cause of action. *Id.*

In response, Plaintiff argues that the initial Complaint was filed without the assistance of counsel, and at a time when he was still defending against criminal charges brought against him in state court based on the allegations contained in Officer Figueiredo's police report. Reply at 1-2. Plaintiff contends that the administrative claim filed on July 2, 2013, provided notice to Union City that he was alleging mental anguish, emotional distress, and pain and suffering from Officer Figueiredo's conduct, and that criminal charges were filed against him in state court based on Officer Figueiredo's report. *Id.* at 2. Plaintiff further argues that his "state law claims pertaining to the right to freedom from violence and the violation of his clearly established constitutional rights were also alleged as early as July 2, 2013, and such allegations although not clearly labeled

as such, are showcased all the way through Plaintiff's initial complaint." *Id.*

"[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 665 F.2d 977, 980 (9th Cir. 1981); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). However, undue delay combined with other factors may warrant denial of leave to amend. *See, e.g.*, *Jackson*, 902 F.2d at 1387-89 (holding that prejudice and undue delay are sufficient to deny leave to amend); *Morongo Band of Mission Indians*, 893 F.2d at 1079 ("delay of nearly two years, while not alone enough to support denial, is nevertheless relevant").

A moving party's inability to sufficiently explain its delay may indicate that the delay was undue. *Jackson*, 902 F.2d at 1388. Whether the moving party knew or should have known the facts and theories raised in the proposed amendment at the time it filed its original pleadings is a relevant consideration in assessing untimeliness. *Id.* "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). "At some point, . . . a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible [ground] for relief and should be considered." *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation marks omitted).

The Court finds that Plaintiff's delay in seeking leave to amend does not preclude leave to amend. First, the balance in this case is tipped in favor of allowing leave to amend because Plaintiff's initial Complaint was filed pro se and the policy of favoring amendments under Rule 15(a) "is applied even more liberally to pro se litigants" than to parties represented by counsel. *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987). Accordingly, pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even though Plaintiff is now represented by counsel, the Court is bound by both Rule 15's liberal policy for granting leave and the wider latitude given to pro se litigants, thus permitting Plaintiff's pro se filing to be amended by the attorney he has now retained. It is thus in the interest of justice to allow Plaintiff, now with the guidance of counsel, to have an opportunity

to set forth his claims with more precision.

Second, after the Court dismissed Plaintiff's initial Complaint with leave to amend, the parties filed a stipulated request to stay this case pending resolution of the related criminal proceedings, which the Court granted. Dkt. Nos. 47, 48. Moreover, although this case was initially assigned to the undersigned, it was at one point reassigned to another judge due to related case issues, only to be reassigned once again to the undersigned after the related case was dismissed. *See* Dkt. Nos. 14, 24, 30. Thus, much of the delay between Plaintiff's initial Complaint and the present motion is attributable to matters outside of Plaintiff's control.

Finally, Plaintiff filed the present motion within the timeframe set by the Court. Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

### C. Prejudice to the Opposing Party

Defendants also argue that expanding the scope of this case causes prejudice "by creating significant new theories to be investigated and defended, all in a compressed time schedule." Opp'n at 6. Defendants note that fact discovery closes in less than six months and the pleadings are not yet settled. *Id.* at 5. Defendants further argue that the new claims require a shift in their litigation strategy because, rather than addressing the probable cause behind Plaintiff's arrest and the reasonableness of force used against him, Plaintiff's new allegations "require egress into other areas, including: (1) analysis and defense of the Department's customs, policies, and practices; (2) the subjective motivation for Plaintiff's arrest; and (3) the rationale behind Plaintiff's criminal prosecution (an entirely separate act conducted by the District Attorney's office)." *Id.* at 6.

In response, Plaintiff maintains that the proposed Second Amended Complaint "is a concise and focused statement of his claims that arise from the same operative facts that Defendants have known about since the claim was filed." Reply at 2. Plaintiff argues that Defendants have been on notice of these claims based on the language in his 2013 tort claim. *Id.*

"The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions*, 194 F.3d 980, 986 (9th Cir.

1    1999) (citing *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998)).

2    However, "[n]either delay resulting from the proposed amendment nor the prospect of additional

3    discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice."

4    *Tyco Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14,

5    2009).

6        Given the early stage of this litigation, the Court finds that Defendants have failed to establish prejudice sufficient to deny Plaintiff leave to amend. The Court issued the Case Management Order in this case less than one month ago, and the parties have over six months remaining to complete discovery, dispositive motions are not due until January 2016, and the trial is over one year away. *See* Dkt. No. 58. Further, even though Defendants argue that the new claims will require them to shift their litigation strategy, Plaintiff's administrative tort claim put them on notice of such claims. In his administrative claim, Plaintiff alleged that charges were filed against him "in retaliation for past complaints I made towards the police dept. and not believing that [I] was having a diagnosed medical condition." Allen Decl., Ex. A at 3. Moreover, Plaintiff's initial Complaint included allegations that Officer Figueiredo's use of excessive force violated his constitutional rights, which forms the basis of his proposed sections 51.7 and 52.1 claims.

    In support of their position that the new claims constitute a radical shift in the litigation, Defendants cite *Morongo Band of Mission Indians v. Rose*. In that case, the plaintiff tribe brought an action to enforce its ordinance regulating bingo games on its reservation, but two years later sought to add claims based upon the Racketeer Influenced and Corrupt Organizations Act, criminal depredation, and trespass statutes. 893 F.2d at 1079. The Ninth Circuit affirmed the district court's denial of leave to amend, finding that the new claims "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Id.* Here, however, Plaintiff's proposed claims are based on the same facts as alleged in his administrative tort claim and initial Complaint; they do not greatly alter the case. Further, to the extent that Defendants may have to shift their litigation strategy, the case is still in the preliminary stages of litigation, and any such shift is therefore not sufficient to

13

1 deny Plaintiff leave to amend.

2 Accordingly, this factor also weighs in favor of amendment.

**D.   Futility of Amendment**

Next, Defendants argue that leave to amend would be futile as to Plaintiff's Fifth Amendment, California Civil Code section 51.7, malicious prosecution, and injunctive relief claims. Opp'n at 6-10. The Court considers each in turn.

1.   Legal Standard

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient. However, a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim[.]" *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted). The standard to be applied is identical to that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.*

To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation and internal quotation marks omitted).

2.   Fifth Amendment Claim

Defendants first argue that Plaintiff's Fifth Amendment claims are insufficiently plead because (1) no cause of action for "Fifth Amendment Retaliation" exists, (2) the Court's previous order dismissed all Fifth Amendment allegations with prejudice, and (3) the Fifth Amendment only applies to federal officers. Opp'n at 6-7. In response, Plaintiff states that his "Fifth Amendment claim can be analyzed under his excessive force claim," and he therefore "does not oppose dismissal of his Fifth Amendment retaliation claim." Reply at 3. Accordingly, leave to amend is would be futile as to Plaintiff's Fifth Amendment claim.

14

3. California Civil Code section 51.7

Plaintiff's proposed fifth claim alleges a violation of the Ralph Civil Rights Act, California Civil Code section 51.7, which grants the "right to be free from any violence, or intimidation by threat of violence, committed" against "persons or property" based a characteristic such as sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation. Cal. Civ. Code § 51.7(b), (e). To state a claim under section 51.7, the plaintiff must allege: (1) that the defendant threatened or committed violent acts against the plaintiff or his or her property; (2) that a motivating reason for the defendant's conduct was his or her perception of the plaintiff's protected characteristic; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff harm. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007).

Defendants argue that Plaintiff cannot establish a section 51.7 claim because, while he alleges that Defendants' conduct was a substantial factor in causing his alleged harm, Plaintiff fails to allege that Officer Figueiredo's excessive force against Plaintiff was motivated by Plaintiff's medical condition. Opp'n at 7. In response, Plaintiff maintains that he has stated a plausible section 51.7 claim because Officer Figueiredo's excessive force was motivated by his medical condition. Reply at 3.

Having reviewed Plaintiff's proposed Second Amended Complaint, the Court finds that Plaintiff has not properly alleged a section 51.7 claim. As noted above, to state a claim under section 51.7, the alleged facts must support a reasonable inference that Plaintiff's protected characteristic was a motivating reason for the Officer Figueiredo's conduct. *See Austin B.*, 149 Cal. App. 4th at 880-81. Without more, an allegation that the plaintiff is a member of a protected class is insufficient to raise this inference. *See Arres v. City of Fresno*, 2011 WL 284971, at *27 (E.D. Cal. Jan. 26, 2011); *East v. City of Richmond*, 2010 WL 4580112, at *5 (N.D. Cal. Nov. 3, 2010). Plaintiff alleges that Defendants "violated Plaintiff's right to be free from violence, threat of violence or intimidation by threat of violence, on the basis of Plaintiff's medical condition." Prop. Sec. Am. Compl. ¶ 90, Dkt. No. 60. However, although he alleges that Officer Figueiredo committed violent acts against him, nowhere does Plaintiff allege that Officer Figueiredo was

aware of, let alone motivated by, his medical condition. Accordingly, leave to amend would not be futile, but only if Plaintiff revises the proposed amended complaint to plead all necessary elements of a section 51.7 claim, including that Defendants were aware of Plaintiff's medical condition and that it was a motivating reason for their conduct.

4. Malicious Prosecution

Plaintiff's proposed seventh claim is for malicious prosecution against Union City and Officer Figueiredo. Prop. Sec. Am. Compl. ¶¶ 101-11. He alleges that these Defendants acted without probable cause in initiating criminal proceedings against him, which the Alameda County District Attorney's Office subsequently dismissed on the basis that the underlying criminal case lacked merit. *Id.* ¶¶ 105-06.

Defendants argue that this claim fails due to insufficient pleading because Plaintiff fails to allege facts that (1) the prosecution was commenced at the direction of Officer Figueiredo; (2) the prosecution was brought without probable cause; and (3) the prosecution was dismissed in Plaintiff's favor. Opp'n at 8. In response, Plaintiff maintains that his claim is properly plead because he alleges that Officer Figueiredo caused the District Attorney's Office to file the criminal complaint, Defendants acted without probable cause in that they did not believe Plaintiff to be guilty of the crimes charged against him, and the District Attorney's Office dismissed the complaint because the prosecuting attorney believed the underlying criminal case lacked merit. Reply at 4.

"To prove a claim of malicious prosecution in California, the plaintiff must prove that the underlying prosecution: '(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.'" *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863 (1989)).

Having reviewed Plaintiff's proposed second amended complaint, the Court finds that Plaintiff is able to plead a malicious prosecution claim. As to the first element, Plaintiff alleges that "Officer Figueiredo . . . caused the Alameda County District Attorney's Office to file a criminal complaint against the plaintiff." Prop. Sec. Am. Compl. ¶ 102. While Defendants argue

that this does not establish that the prosecution was commenced at the direction of Officer Figueiredo, a plaintiff may maintain a malicious prosecution claim "if he is able to prove the allegations in his complaint that the criminal proceedings were initiated on the basis of the defendants' intentional and knowingly false accusations and other malicious conduct." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Thus, while "there is a rebuttable presumption that a prosecutor exercises independent judgment regarding the existence of probable cause in filing a complaint," *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986), *opinion modified on denial of reh'g*, 811 F.2d 504 (9th Cir. 1987), the presumption of prosecutorial independence does not bar a subsequent claim "against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings[.]" *Awabdy*, 368 F.3d at 1067; *see also Sheldon*, 47 Cal. 3d at 878 ("One who procures a third person to institute a malicious prosecution is liable, just as if he instituted it himself.").

As to termination, Plaintiff alleges that "the Alameda County District Attorney's Office dismissed the Criminal Complaint previously filed against the plaintiff because the prosecuting attorney believed that the underlying criminal case lacked merit and that Plaintiff was innocent of the charges." Prop. Sec. Am. Compl. ¶ 105. Defendants argue that this statement is conclusory in that Plaintiff offers no facts supporting these assertions. Opp'n at 10. Defendants argue that Plaintiff must, "for example, include . . . statements from or conversations with the Deputy District Attorney who prosecuted the case . . . [or] attach a copy of the transcript from Plaintiff's dismissal hearing, or a copy of the Court order dismissing the case." *Id.* However, this is a factual determination that is not appropriate at the pleading stage. Plaintiff alleges that the prosecuting attorney dismissed the complaint because he believed Plaintiff was innocent of the charges. This claim is plausible on its face.

As to the second element, Plaintiff alleges that "Defendants acted without probable cause in initiating the prosecution of plaintiff, in that they did not honestly, reasonably, and in good faith believe Plaintiff to be guilty of the crime or crimes charged against him." Prop. Sec. Am. Compl.

¶ 106. Defendants argue that Plaintiff cannot establish a lack of probable cause based on the statements of Sau Nguyen. Opp'n at 9. Specifically, Defendants note that Plaintiff's original included the following allegation: "During his conversation with officers, he . . . pointed towards Mr. Castro, accusing him, for causing his injury, in order to have him arrested and going to jail. At that point officers placed Mr. Castro under arrest for battery." Compl. ¶ 26. However, "when a plaintiff files an amended complaint, '[t]he amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). Regardless, even if the Court were to consider this allegation, it does not establish as a matter of law that Defendants had probable cause to arrest. Although eyewitness identifications are permissible bases for probable cause to arrest, their permissibility turns upon: (1) whether officers "employ[ed] an identification procedure so impermissibly suggestive as to give rise to a substantial likelihood of misidentification"; and (2) whether the witness "exhibit[ed] sufficient indicia of reliability to protect the integrity of their identifications." *Grant v. City of Long Beach*, 315 F.3d 1081, 1086 (9th Cir. 2002). The Court finds it premature to make such a factual determination at this preliminary stage in the proceedings.

Finally, as to the third element, Plaintiff alleges that "Defendants acted maliciously in instigating the criminal prosecution, in that they were retaliating against Plaintiff, for asserting his constitutional rights as alleged herein, i.e., requesting necessary and proper medical care for the injuries he received when he was assaulted immediately prior to his arrest, all of which establishes an improper motive, purpose, prejudice, or a desire to annoy, harass, and wrong Plaintiff." Prop. Sec. Am. Compl. ¶ 107. These allegations are sufficient to establish a plausible claim of malicious prosecution. Accordingly, leave to amend would not be futile as to Plaintiff's Motion as to his malicious prosecution claim.

     5.    <u>Injunctive Relief</u>

Plaintiff's proposed tenth claim is for injunctive relief. Prop. Sec. Am. Compl. ¶¶ 124-30. Defendants argue that this claim is futile because injunctive relief is a remedy, not a cause of action. The Court agrees. *See Mesa Shopping Ctr.-E., LLC v. Hill*, 232 Cal. App. 4th 890, 901

1  (2014) ("specific performance and injunctive relief are equitable remedies and not causes of action

2  for injuries . . . . Injunctive relief must be tethered to a substantive cause of action." (quotations

3  and citations omitted)); *Wong v. Jing*, 189 Cal. App. 4th 1354, 1360 n.2 (2010) (same).

4  According, leave to amend would be futile as to Plaintiff's separate claim for injunctive relief.

**E.     Previous Amendments**

Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citing *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)). In *Chodos*, the Ninth Circuit affirmed the district court's denial of leave to amend when the party knew of the factual basis for the amendment prior to a previous amendment. 292 F.3d at 1003. Further, a party that contends it learned "new" facts to support a claim should not assert a claim that it could have pleaded in previous pleadings. *Edwards Lifesciences LLC v. Cook Inc.*, 2008 WL 913328, at *3 (N.D. Cal. Apr. 2, 2008) (citing *Chodos*, 292 F.3d at 1003).

Here, Plaintiff has not previously sought leave to amend. Thus, this factor also weighs in favor of permitting amendment.

## CONCLUSION

Based on the analysis above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Leave to File a Second Amended Complaint. Plaintiff's Motion is **GRANTED** as to all claims, except that: (1) leave to amend is **DENIED** as to Plaintiff's Fifth Amendment and injunctive relief claims; and (2) leave to amend as to Plaintiff's California Civil Code section 51.7 claim is **GRANTED**, but only if Plaintiff is able to plead all necessary elements of the claim, including that Defendants were aware of Plaintiff's medical condition and that it was a motivating reason for their conduct. Plaintiff shall file a revised Second Amended Complaint by June 25, 2015. No chambers copy is required.

**IT IS SO ORDERED.**

Dated: June 18, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge