1

2

3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARY CASTRO,

        Plaintiff,

    v.

CITY OF UNION CITY, et al.,

        Defendants.

Case No.  14-cv-00272-MEJ

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 80

## INTRODUCTION

Plaintiff Gary Castro ("Plaintiff") filed this civil rights action alleging violations of 42 U.S.C. § 1983 and related state law claims against Defendants City of Union City (the "City") and Officer Christopher Figueiredo (collectively, "Defendants") based on his arrest and detention in 2013.  Now pending before the Court is Defendants'[1] Motion for Summary Judgment.  Dkt. No. 80.  Plaintiff filed an Opposition, Dkt. Nos. 88-89,[2] and Defendants filed a Reply, Dkt. No. 104. The Court previously found this Motion suitable for disposition without oral argument and vacated the hearing.  Dkt. No. 110.  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for the following reasons.

//

---

[1] The Chief of Police Brian Foley originally joined Defendants in filing this Motion, but on February 19, 2016, Defendants and Plaintiff filed a stipulation for the dismissal of Chief Foley and the related supervisory liability claims, which the Court granted on February 22, 2016.  Stip., Dkt. No. 101; Order Granting Stip., Dkt. No. 102.

[2] Plaintiff filed his Opposition in two parts, across two docket numbers.  Consequently, citations for Plaintiff's Opposition pages 1-9 can be found in docket number 88, while pages 10-25 are found in docket numbers 89.

**BACKGROUND**

**A.    The Incident and Arrest**

    1.    <u>Defendants' Version</u>

At around 7:00 pm on February 4, 2013, Officer Figueiredo was dispatched to Skylark Drive and Peacock Place in Union City, California, responding to reports that an elderly man was injured.  *See* Consolidated Statement of Undisputed Facts, Defendants' Undisputed Facts ¶¶ 1-2, Dkt. No. 107.[3]  At the scene, Officer Figueiredo tried to speak with the reported victim (later identified as Sau Nguyen[4]) to ascertain what happened but was unable to do so because Nguyen did not speak English.  DUF ¶¶ 3-4.  Observing a group of about a dozen onlookers at the scene, Officer Figueiredo asked if anyone had seen what happened or knew how Nguyen got hurt or where he lived.  DSUF ¶ 5.  None of the onlookers said they knew what happened, *id.* ¶ 6, but one came forward and said he called 911 after seeing Nguyen hurt and bleeding, DUF ¶¶ 7-8.  Because of the language barrier with Nguyen, a Vietnamese translator was requested.  *Id.* ¶ 9.  Officer Nguyen volunteered and responded.  *Id.* ¶ 10.  Officer Figueiredo knew Officer Nguyen was fluent in Vietnamese.  *Id.* ¶ 11.

Officer Nguyen arrived on-scene and spoke with Mr. Nguyen.  *Id.* ¶ 12.  He then provided Officer Figueiredo a summary of the conversation.  *Id.* ¶ 13.  He explained that Mr. Nguyen had described an altercation between him and a man in which the man chased and kicked Mr. Nguyen in the chest, causing him to fall to the ground with his hands outstretched to break his fall.  *Id.* ¶ 14.  Mr. Nguyen grabbed the man's legs, to prevent him from escaping, but he broke free.  *Id.* ¶

---

[3] In the Consolidated Statement of Undisputed Facts, Defendants consolidated their Statement of Undisputed Facts ("DSUF") (Dkt. No. 84) with Plaintiff's Response and Additional Undisputed Facts (Dkt. Nos. 90-91) (Dkt. No. 90 contains Plaintiff's responses to ¶¶ 1-90 of the DSUF, while Dkt. No. 91 contains Plaintiff's Additional Undisputed Facts).  However, not all these facts are actually undisputed.  For clarity about which of the parties' facts the Court considers undisputed, the Court refers to the Consolidated Statement in two parts: first, as Defendants' Undisputed Facts or "DUF" (available at pages 1-44 of the Consolidated Statement), and second, as Plaintiff's Undisputed Facts or "PUF" (available at pages 45-69 of the Consolidated Statement).  The Court considers the facts listed in the DUF and PUF undisputed.

[4] Plaintiff originally named San Nguyen as a defendant but the Court dismissed him after finding that Plaintiff failed to serve him within the time set forth in Rule 4(m) or show good cause as to why he needed additional time to serve Nguyen.  *See* Dkt. No. 30.

United States District Court
Northern District of California

15.  Mr. Nguyen sustained injuries to his hands and had trouble breathing.  *Id.* ¶ 16.  Officer Nguyen also told Officer Figueiredo that—during the retelling of events—Mr. Nguyen interjected and identified Plaintiff as the man who assaulted him.  *Id.* ¶ 17.

After being updated by his colleague, Officer Figueiredo went to speak with Plaintiff.  DSUF ¶ 18.  He asked what happened and if Plaintiff knew Nguyen and had been in an altercation with him.  *Id.* ¶ 19.  Plaintiff admitted confronting Nguyen while he was retrieving recyclables and that he tried to shoo Nguyen away.  DUF ¶ 20.  He then said an altercation occurred between them.  *Id.* ¶ 21.  Plaintiff asserted Nguyen was the assailant.  *Id.* ¶ 22.

Before arresting Plaintiff, Officer Figueiredo also observed an age, height, and weight discrepancy between Nguyen and Plaintiff.  *Id.* ¶ 23.  Plaintiff appeared younger than Nguyen, with a clear height and weight advantage.  *Id.*  Based upon their driver's licenses, Nguyen was 5'5", 110 pounds, and 68 years old; Plaintiff was 6'0", 240 pounds, and 52 years old.  *Id.*  He also noticed Nguyen's hands bleeding, with large abrasions, lacerations, and a flap of skin hanging from the palm of his left hand.  *Id.* ¶¶ 24-25.  Officer Figueiredo arrested Plaintiff under California Penal Code section 243(d), battery with serious bodily injury, among other things.  *Id.* ¶ 28.

An officer transported Plaintiff to the Union City police station.  *Id.* ¶ 29.  Plaintiff was advised of his *Miranda* rights and requested a lawyer.  *Id.* ¶ 31.

2.    Plaintiff's Version

On February 4, 2013, at about 6:45 pm, Plaintiff was employed[5] as a maintenance man/security patrol at a residential complex located on Skylark Drive and Peacock Place in Union City, California.  Declaration of Gary Castro ("Castro Decl.") ¶ 3, Dkt. No. 98; PUF ¶ 4.  While Plaintiff was working that evening, he encountered a repeated trespasser, Nguyen, dumping trash on the ground while looking for recyclables.  Castro Decl. ¶ 3.  Plaintiff shouted at Nguyen to stop, and Nguyen then ran away.  *Id.* ¶¶ 3-4.  When Plaintiff and a resident, Arthur Santos, went to

---

[5] Plaintiff was employed by Massingham & Associates (PUF ¶ 4), who Plaintiff initially named as a Defendant, but the Court dismissed Plaintiff's employer after finding Plaintiff had failed to serve it within the time set forth in Rule 4(m) or otherwise show good cause as to why he needed additional time to serve it.  *See* Dkt. No. 30.

United States District Court
Northern District of California

1   ensure Nguyen had left, they found Nguyen lying on his back. *Id.* ¶ 4. Santos took Nguyen's bag

2   of recyclables and left the area, after which Nguyen attacked Plaintiff, head-butting Plaintiff in his

3   midsection and causing him to fall onto the pavement on his tailbone, elbow, and the back of his

4   head. *Id.* ¶¶ 5-7. Nguyen then lunged at Plaintiff again, and then chased after Santos. *Id.* ¶ 9.

5        When Plaintiff saw Officer Figueiredo get out of his patrol car, Plaintiff approached him,

6   introducing himself as the property's maintenance man. *Id.* ¶ 10; PUF ¶ 15. He explained that

7   Nguyen was a repeated trespasser and had just attacked and injured him. Castro Decl. ¶ 10.

8   Plaintiff told Officer Figueiredo he was in extreme pain and wanted to make a citizen's arrest. *Id.*

9        Officer Figueiredo grabbed Plaintiff, handcuffed him, took him over to his patrol car,

10  bending Plaintiff over the trunk, searching him, and taking things out of his pockets. *Id.* ¶ 11.

11  Officer Figueiredo never asked Plaintiff what had happened. *Id.* ¶ 12. Rather, Plaintiff alleges he

12  told Officer Figueiredo he saw Nguyen dumping trash all over the property while he was looking

13  for recyclables. *Id.* ¶¶ 12-13. He also told Officer Figueiredo he had shouted out from a distance

14  to Nguyen to stop and leave the property and that when Nguyen heard and saw Plaintiff, he

15  stopped and took off running. *Id.* ¶ 12. Plaintiff also repeated that Nguyen had assaulted him and

16  knocked him down, causing him to injure his elbow, tailbone, and head. *Id.* ¶ 13. Plaintiff asked

17  Officer Figueiredo to retrieve Nguyen's bag of recyclables from Santos's girlfriend's unit and to

18  gather the evidence such as blood Nguyen had left on the door and bricks. *Id.* ¶ 15. Plaintiff also

19  asked Officer Figueiredo to talk to a group of residents who had witnessed the assault, but Officer

20  Figueiredo refused. *Id.* Plaintiff never saw Officer Figueiredo interview any onlooker witnesses

21  despite several of them "trying to tell the police what had happened." *Id.* ¶ 16. Officer Figueiredo

22  put Plaintiff in front of Nguyen and another officer, at which time he told Plaintiff that Nguyen

23  pointed at him, which Plaintiff did not see. *Id.* ¶ 17. Officer Figueiredo then transported Plaintiff

24  to the Union City Police Department. *Id.* ¶ 19; PUF ¶ 27.

25  **B.      Post-Incident and Arrest**

26         1.      Defendants' Version

27         As Officer Figueiredo prepared to transport Plaintiff to Fremont Jail, Plaintiff complained

28  of tailbone and elbow pain, claiming he landed on his tailbone and hit his elbow during the

United States District Court
Northern District of California

4

altercation.  DUF ¶ 32.  Officer Figueiredo asked if he wanted an ambulance, and Plaintiff said

yes.  *Id.* ¶ 33.  Officer Figueiredo requested an ambulance, which then transported Plaintiff to

Washington Hospital.  *Id.* ¶ 34.  Before transport, Officer Figueiredo did an initial medical

evaluation and noticed a lump on Plaintiff's right elbow.  DSUF ¶ 35.

Plaintiff was treated at Washington and found to have no significant injuries or medical

problems.  *Id.* ¶ 36.[6]  Medically cleared for booking, Officer Figueiredo transported Plaintiff to

Fremont Jail.  DUF ¶ 37.  Upon arrival, Plaintiff asked jail staff about bail and after informing him

of the amount, Plaintiff made several unsolicited statements: (1) he was a maintenance worker at

the property where the altercation occurred; (2) he had been told to keep people out of the

recyclables; (3) he was doing his job and that Nguyen attacked him also; and (4) he put his foot

forward in self-defense, to prevent Nguyen from coming at him.  *Id.* ¶¶ 38, 39.  Officer Figueiredo

reminded Plaintiff of his *Miranda* rights and Plaintiff again requested a lawyer.  *Id.* ¶ 40.  Plaintiff

then complained of dizziness, and jail staff declined to take him.  *Id.* ¶ 41.

Officer Figueiredo and Plaintiff walked back to the patrol car to go to Santa Rita Jail.  *Id.* ¶

42.  Before leaving, Plaintiff began hyperventilating and screaming that he could not breathe.  *Id.*

¶¶ 43, 44.  Efforts to calm Plaintiff failed and he demanded medical attention.  DSUF ¶ 45.

Officer Figueiredo called an ambulance, which brought Plaintiff back to Washington Hospital.

DUF ¶ 46.  The ambulance paramedics informed Officer Figueiredo they found nothing medically

---

[6] Plaintiff objected to this statement as well as the statements that (1) Washington Hospital found nothing medically wrong with Plaintiff on his second visit, and (2) the ambulance paramedics found nothing wrong with Plaintiff, *see* DSUF ¶¶ 36, 47, 49.  Pl.'s Objs. at 2-3, Dkt. No. 99. Plaintiff objects on the grounds that these statements are hearsay and hearsay within hearsay.  *Id.* (citing Fed. R. Evid. 803 (hearsay), 805 (hearsay within hearsay)).  It is unclear why Plaintiff believes these statements by the hospital staff and paramedics are hearsay within hearsay, but in any event, the Court will consider these statements.  First, they appear to fall under an exception to the hearsay rule as a statement made for medical diagnosis or treatment.  Fed. R. Evid. 803(4). Second, for purposes of this Order, the Court also need not take these statements for the truth of the matter asserted but rather may consider them for the effect on the listener, in this case Officer Figueiredo.  *See also* Defs.' Reply to Pl.'s Objs. at 2, Dkt. No. 105 ("Officer Figueiredo testified from his personal knowledge, as to his then-existing state of mind, and as to the effect on him that the hospital staffs' communications had, which are all exceptions to the hearsay rule under Rule 803.").  Finally, to the extent, Plaintiff objects to DSUF ¶ 36 on the grounds of lack of foundation or calling for an expert opinion, the Court overrules those objections as the inquiry presently focuses only on Officer Figueiredo's state of mind and the effect these alleged statements had on his actions.

1    wrong with Plaintiff.  *Id.* ¶ 47.  Upon being evaluated by hospital staff, Plaintiff displayed

2    catatonic behavior and was hyperventilating.  *Id.* ¶ 48.  Hospital staff informed Officer Figueiredo

3    that, despite Plaintiff's behavior, nothing appeared to be medically wrong with him.  *Id.* ¶ 49.

4    They cleared him for booking again.  *Id.* ¶ 50.

5         After Plaintiff was cleared, Officer Figueiredo said it was time to go and tried to get

6    Plaintiff off the gurney.  *Id.* ¶ 51.  Non-responsive, Plaintiff stared blankly and hyperventilated.

7    *Id.* ¶ 52.  Officer Figueiredo requested assistance, and Officer Rodriguez responded.  *Id.* ¶ 53.  The

8    two officers picked up Plaintiff off the gurney and transported him down the hall.  *Id.* ¶ 54.

9    Plaintiff's body went limp.  *Id.* ¶ 55.  The officers then placed Plaintiff in a wheelchair.  *Id.* ¶ 56.

10        Upon reaching the patrol car, they picked Plaintiff up and attempted to place him in the

11   car.  DSUF ¶ 57.  Plaintiff refused by stiffening-up and making his body rigid, making it difficult

12   to place him in the vehicle.  *Id.* ¶¶ 58-59.  Officer Figueiredo then requested a WRAP, and Officer

13   Leon responded.  *Id.* ¶¶ 60-61.  The purpose of the WRAP was to secure Plaintiff and safely

14   transport him.  *Id.* ¶ 66. While attempting to apply the WRAP, Plaintiff protested.  DUF ¶ 62.  He

15   did not want the WRAP and said he wanted a more spacious vehicle.  DSUF ¶ 63.  After applying

16   the WRAP, the officers placed Plaintiff upright in the patrol car, and Officer Figueiredo seat-

17   belted him in.  *Id.* ¶ 64.  They then went to Santa Rita Jail, where Plaintiff was booked.  DUF ¶ 65.

18        2.    Plaintiff's Version

19        After arriving at the Union City Police Department, Plaintiff again informed Officer

20   Figueiredo that he was in severe pain to his tailbone, head, shoulder, elbow, and was having

21   difficulty standing.  Castro Decl. ¶ 21; PUF ¶ 28.  Plaintiff asked for an ambulance to take him to

22   the hospital to be treated for his injuries.  *Id.* (both).  Once the ambulance arrived, Officer

23   Figueiredo took photographs of the injury and swelling to Plaintiff's elbow, but refused to look at

24   or photograph the injuries to his tailbone and never did a medical evaluation.  Castro Decl. ¶ 22.

25        After being taken to Washington Hospital for treatment, Plaintiff was treated and released

26   back into police custody.  *Id.* ¶ 23; PUF ¶ 30.  Plaintiff believes he was "given inadequate

27   treatment for [his] debilitating injuries."  Castro Decl. ¶ 23.  Officer Figueiredo then transported

28   Plaintiff to Fremont Jail for booking, where Plaintiff again explained to Officer Figueiredo that he

6

1    was just doing his job keeping trespassers off the property and was only acting in self-defense.  *Id.*

2    ¶ 24; PUF ¶ 31.  Fremont Jail declined to book Plaintiff "due to [his] medical conditions[,]" after

3    which Officer Figueiredo informed Plaintiff they were going to Santa Rita Jail.  Castro Decl. ¶ 25.

4    Plaintiff was hyperventilating and could not breathe.  *Id.* ¶ 26.  Plaintiff states he was suffering

5    from dizziness, breathing difficulties, numbness throughout his body, severe anxiety, panic

6    attacks, excruciating low back pain, tailbone pain, and head trauma, none of which was addressed

7    at Washington Hospital.  *Id.*  Officer Figueiredo did not make any effort to calm Plaintiff down

8    but instead became upset and frustrated, fixating on taking Plaintiff to Santa Rita.  *Id.* ¶ 29.

9    Officer Figueiredo then called an ambulance to transport Plaintiff back to the hospital.  *Id.*

10   ¶ 30; PUF ¶ 36.  The ambulance paramedic did not examine Plaintiff.  Castro Decl. ¶ 30.  After

11   receiving additional treatment in the Emergency Room, Plaintiff was eventually released back into

12   police custody.  *Id.* ¶ 31; PUF ¶ 37.  Officer Figueiredo then told Plaintiff that it was time to leave

13   and tried to get him up off the gurney, but Plaintiff had trouble getting up.  Castro Decl. ¶ 32.

14   Officer Rodriguez arrived on scene to assist Officer Figueiredo, and they attempted to pick

15   Plaintiff up off the gurney by his arms, but Plaintiff could not stand and proceeded to collapse.  *Id.*

16   ¶¶ 33-34.  When Plaintiff was unable to stand, the officers dragged him down the hall and half

17   way down a concrete ramp, at which point they dropped him on his knees.  *Id.* ¶ 35.  Officer

18   Figueiredo yelled at Plaintiff to get up, but he could not, so Officer Figueiredo asked for a

19   wheelchair, at which point the officers "roughly yanked" Plaintiff off the ground and forcefully

20   tossed him into the wheelchair.  *Id.* ¶ 36.  Officer Figueiredo wheeled Plaintiff out to the patrol car

21   and yelled at him to get out of the wheelchair and into the patrol car.  *Id.* ¶ 37.  Plaintiff could not

22   get up "due to [his] medical condition."  *Id.*  He tried to stabilize himself by pulling on the window

23   frame of the car but still could not stand.  *Id.*  When Plaintiff finally managed to get himself about

24   an inch up out of the wheelchair, the officers pulled the wheelchair out from under him, causing

25   him to fall on his knees and tailbone.  *Id.*

26   Officer Figueiredo then picked up Plaintiff, forcefully throwing him into the patrol car.  *Id.*

27   ¶ 38.  Officer Figueiredo tried to get Plaintiff to sit up but he kept falling over because there was

28   not enough room in the back seat and Plaintiff was experiencing excruciating pain to his tailbone

United States District Court
Northern District of California

7

1  and knees. *Id.* Plaintiff told Officer Figueiredo he needed more space and could not fit into the

2  patrol vehicle. *Id.* ¶ 39. One officer was on each side of the patrol car, with Officer Figueiredo by

3  Plaintiff's head. *Id.* ¶ 40. Officer Figueiredo began to get very angry and started punching

4  Plaintiff in his right shoulder. *Id.* Officer Figueiredo then grabbed Plaintiff by his collar and

5  pulled him out of the car. *Id.* Plaintiff landed on his tailbone on the concrete pavement, and as he

6  was screaming in pain, Officer Figueiredo dragged him to a nearby car to lean him against the tire.

7  *Id.* ¶ 41. Due to Plaintiff's "medical issues," he could not sit up and kept falling over. *Id.* ¶ 42.

8  Officer Figueiredo sat him up twice, but after the second time, he simply left Plaintiff lying face

9  down on the concrete. *Id.* Officer Figueiredo then called for a body wrap. *Id.* ¶ 43.

10  The entire time they were waiting for the wrap, Officer Figueiredo threatened Plaintiff. *Id.*

11  He told Plaintiff that if he did not cooperate, he was going to ruin his life. *Id.* He said he was

12  going to call Plaintiff's supervisor and that he would lose his job and home, and that he would

13  make sure Plaintiff was charged criminally and that he would add other charges to his record. *Id.*

14  He then told Plaintiff he would end up having to file for bankruptcy because he would have to use

15  all of his money to pay for an attorney. *Id.* Plaintiff could not respond as he was lying with his

16  face on the concrete, unable to move. *Id.*

17  Officer Figueiredo and his assisting officers restrained Plaintiff in a body wrap. *Id.* ¶ 44.

18  There was a strap connecting Plaintiff's chest to his legs, which the officers pulled as tight as

19  possible, forcing Plaintiff's body to be positioned in a 45-degree angle, cutting off his oxygen

20  supply. *Id.* Something inside the wrap also pierced Plaintiff in his stomach. *Id.* Plaintiff told the

21  officers he could not breathe and begged them to please not do this to him. *Id.* The officers then

22  strapped a fully enclosed helmet on Plaintiff's head and forced him into the back seat without seat-

23  belting him in. *Id.* ¶¶ 45, 47. Officer Figueiredo and the other officers then leaned up against the

24  patrol car drinking beverages, laughing, waiving, and taunting Plaintiff as he was begging and

25  pleading with them for relief. *Id.* ¶ 48.

26  **C.      Criminal Charges Against Plaintiff**

27  On or about February 6, 2013, the Alameda County District Attorney's Office filed a

28  criminal complaint against Plaintiff charging him with: (1) battery with serious bodily injury, as a

8

United States District Court
Northern District of California

1   serious felony and a violent felony, Cal. Penal Code § 243(d); (2) elder abuse, *id.* § 368(c); (3)

2   resisting executive officer, by means of threats and violence to deter and prevent Officer

3   Figueiredo from performing a duty imposed on him by law and knowingly resisting by the use of

4   force and violence, *id.* § 69; (4) resist, obstruct, delay of a Peace Officer, by willfully and

5   unlawfully resisting, delaying, and obstructing Officer Figueiredo as he attempted to and

6   discharged the duty of his office and employment, *id.* § 148(a)(1).  Declaration of Steven Taxman[7]

7   ("Taxman Decl."), Ex. 1 (Criminal Compl.), Dkt. No. 93.  On February 17, 2015, the District

8   Attorney's office dismissed the complaint.  DUF ¶ 90; *see also* Dkt. No. 81-8 (Records Search

9   indicating dismissal of criminal case).

10          Officer Figueiredo had not been aware Plaintiff was charged.  DUF ¶ 67.  He then received

11  a subpoena one day to appear in court; he had a phone call with a Deputy District Attorney

12  acknowledging receipt of the subpoena.  *Id.* ¶ 68.  Sometime after that, she called to say he no

13  longer had to appear.  *Id.* ¶ 69.  Officer Figueiredo was never told the outcome of the criminal

14  case.  *Id.* ¶ 70.

15  **D.      Procedural Background**

16          Plaintiff filed this action pro se on January 16, 2014.  *See* Compl., Dkt. No. 1.  On June 25,

17  2015, Plaintiff (now with counsel) filed his operative complaint, the Second Amended Complaint

18  ("SAC") (Dkt. No. 68), asserting nine causes of action: (1) a Fourth Amendment violation against

19  Officer Figueiredo for unreasonable seizure and excessive force under 42 U.S.C. § 1983; (2) a

20  First Amendment violation against Officer Figueiredo for retaliation; (3) a municipal liability

21  claim against the City and Chief Foley under 42 U.S.C. § 1983; (4) a violation of California Civil

22  Code section 52.1 against the City and Officer Figueiredo; (5) a violation of California Civil

23  Code section 51.7 against the City and Officer Figueiredo; (6) an intentional infliction of emotional

24  distress claim against the City and Officer Figueiredo; (7) a malicious prosecution claim against

25  the City and Officer Figueiredo; (8) a negligence claim against Officer Figueiredo; and (9) a

26

27  [7] Plaintiff filed Mr. Taxman's Declaration and supporting exhibits across several docket numbers.
The Declaration itself is available at Dkt. No. 92, exhibits 1-3 at Dkt. No. 93, exhibits 4-6 at Dkt.

28  No. 94, exhibit 7 (part 1) at Dkt. No. 95, exhibit 7 (part 2) at Dkt. No. 96, and exhibit 8 at Dkt. No. 97.

1    Substantive Due Process claim against the City and Officer Figueiredo under 42 U.S.C. § 1983.

2         Defendants moved for summary judgment with respect to the following causes of action:

3         1. Unlawful Arrest (Fourth Amendment) (42 U.S.C. § 1983) (First Cause of Action)

4         2. Excessive Force (Fourth Amendment) (42 U.S.C. § 1983) (First Cause of Action);

5         3. First Amendment Retaliation (42 U.S.C. § 1983) (Second Cause of Action);

6         4. Failure to Train/Supervise (*Monell*) (42 U.S.C. § 1983) (Third Cause of Action);

7         5. California Civil Code § 51.7 (Fifth Cause of Action);

8         6. Malicious prosecution (Seventh Cause of Action); and

9         7. Substantive Due Process (Fourteenth Amendment) (42 U.S.C. § 1983) (Ninth Cause of

10        Action).

11   Mot. at ii.

12        However, as Defendants note in their briefing and as reflected in the parties' subsequent

13   filings, some matters related to the claims above are not at issue or are no longer at issue.  First,

14   Defendants clarify that they challenge Plaintiff's Fourth Amendment excessive force claim only as

15   it relates to Plaintiff's WRAP-related excessive force claim; they do not move for summary

16   judgment on other factual claims that they understand to be disputed facts ("e.g. Plaintiff allegedly

17   being dropped, not seat-belted in, driven fast by the officer").  Mot. at ii n.2.  Second, the parties

18   filed a stipulation for the dismissal of Chief Foley and the related supervisory liability claims

19   (Third Cause of Action), which the Court granted on February 22, 2016.  Stip., Dkt. No. 101;

20   Order Granting Stip., Dkt. No. 102.  Third, and finally, Plaintiff's Opposition clarified that he

21   "does not oppose Defendant's [sic] Request for Summary Adjudication on Plaintiff's Third Cause

22   of Action for Municipal and Supervisory Liability."  Opp'n at 23.

23                                    **LEGAL STANDARD**

24        Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

25   that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

26   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment

27   bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

28   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

United States District Court
Northern District of California

10

317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

Additionally, at the summary judgment stage, parties must set out facts they will be able to prove at trial.  At this stage, courts "do not focus on the admissibility of the evidence's form . . . . [but] instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted).  Thus, "[w]hile the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence."  *Norse v. City of Santa Cruz*, 629

1  F.3d 966, 973 (9th Cir. 2010) (citations omitted).  Accordingly, "[t]o survive summary judgment,

2  a party does not necessarily have to produce evidence in a form that would be admissible at trial,

3  as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."  *Block v.*

4  *City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not

5  "produce evidence in a form that would be admissible at trial in order to avoid summary

6  judgment."); *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on

7  personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

8  is competent to testify on the matters stated.").

9  **DISCUSSION**

10  In the following discussion, the Court first considers Plaintiff's constitutional claims

11  against Officer Figueiredo.[8]  Second, the Court addresses Plaintiff's state law claims.

12  **A.      Constitutional Claims Pursuant to 42 U.S.C. § 1983**

13      1.      <u>Legal Standard Under § 1983</u>

14  Section 1983 provides a remedy for constitutional violations by persons acting under the

15  color of state law.  It provides, in relevant part:

16  > Every person who, under color of any statute, ordinance, regulation,
17  > custom, or usage, of any State . . . . subjects, or causes to be
   > subjected, any citizen of the United States . . . . to the deprivation of
   > any rights, privileges, or immunities secured by the Constitution and
18  > laws, shall be liable to the party injured in an action at law, suit in
   > equity, or other proper proceeding for redress.

19

20  42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides a

21  method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271

22  (1994) (quotation and internal marks omitted).  To prevail on a § 1983 claim, a plaintiff must

23  show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution; (2)

24  by a person acting under the color of state law.  42 U.S.C. § 1983.

25  "Qualified immunity shields federal and state officials from money damages" under §

26

27  ───────────────

[8]  The Court only considers the claims against Officer Figueiredo as "Plaintiff does not oppose
Defendant's [sic] Request for Summary Adjudication on Plaintiff's Third Cause of Action for
Municipal and Supervisory Liability."  Opp'n at 23.  Consequently, the Court **GRANTS** the City
28  summary judgment on Plaintiff's Third Cause of Action for Municipal and Supervisory Liability.

1983 unless a plaintiff demonstrates "(1) that the official violated a . . . constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).  An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011).  In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal.  *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).  "'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'"  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quotation omitted).  Courts exercise their sound discretion in deciding which prong of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.  *al-Kidd*, 131 S. Ct. at 2080.

"The plaintiff bears the burden of proof that the right allegedly violated was clearly established." *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) (quotation omitted).  "To meet this standard the very action in question need not have previously been held unlawful."  *Id.* (quotation and internal marks omitted).  This is particularly true in the Fourth Amendment context, where the constitutional standard of "reasonableness" demands a fact-specific inquiry. *Mattos*, 661 F.3d at 442.  The question is "whether a reasonable officer would have had fair notice that [the action] was unlawful[.]" *Tarabochia*, 766 F.3d at 1125 (quotation omitted). Fundamentally, "[t]he qualified immunity doctrine rests on a balance between, on the one hand, society's interest in promoting public officials' observance of citizens' constitutional rights and, on the other, society's interest in assuring that public officials carry out their duties and thereby advance the public good." *Beier v. City of Lewiston*, 354 F.3d 1058, 1071 (9th Cir. 2004).

//

//

13

1

2. <u>Unlawful Arrest - Fourth Amendment (First Cause of Action)</u>

2          The Fourth Amendment[9] requires that an arrest be supported by probable cause.  *Atwater*

3   *v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *Yousefian v. City of Glendale*, 779 F.3d 1010,

4   1014 (9th Cir.), *cert. denied sub nom. Yousefian v. City of Glendale, Cal.*, 136 S. Ct. 135 (2015)

5   ("The absence of probable cause is a necessary element of § 1983 false arrest and malicious

6   prosecution claims." (citations omitted)).  It is undisputed that Officer Figueiredo arrested

7   Plaintiff; the issue is whether he had probable cause to do so.

8          An arrest is supported by probable cause if, under the totality of the circumstances known

9   to the arresting officer, an objectively reasonable officer would have concluded that there was a

10  fair probability that the defendant had committed or was committing a crime.[10]  *Luchtel v.*

11  *Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010); *Beier*, 354 F.3d at 1065.  Probable cause is a

12  "practical, nontechnical conception" based on a "common-sense conclusion about human

13  behavior," and it is a "fluid concept—turning on the assessment of probabilities in particular

14  factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."  *Illinois v.*

15  *Gates*, 462 U.S. 213, 231-32 (1983) (citations and quotations omitted).  "While conclusive

16  evidence of guilt is of course not necessary . . . to establish probable cause, mere suspicion,

17  common rumor, or even strong reason to suspect are not enough."  *Harper v. City of L.A.*, 533

18  F.3d 1010, 1022 (9th Cir. 2008) (quotation and internal marks omitted).  An officer may not

19  ignore exculpatory evidence that would negate a finding of probable cause, *Broam v. Bogan*, 320

20  F.3d 1023, 1032 (9th Cir. 2003); however, the officer may assess the credibility of evidence when

21  determining whether to arrest a suspect.  *Yousefian*, 779 F.3d at 1014-15.  Thus, the Ninth Circuit

22  has held that a suspect's exculpatory statements to the arresting officer do not defeat probable

23  cause.  *Id.*  Additionally, once probable cause to arrest is established, a law enforcement officer is

24  _____

25  [9] The Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.

26  [10] Likewise, under California law, "an officer has probable cause for a warrantless arrest 'if the
27  facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'"
28  *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (internal citations omitted; edits in original).

United States District Court
Northern District of California

1    not "required by the Constitution to investigate independently every claim of innocence." *Broam*,

2    320 F.3d at 1032.

3          Whether an arrest is supported by probable cause is typically a mixed question of law and

4    fact. *United States v. Hernandez*, 322 F.3d 592, 596 (9th Cir. 2003). Where the material

5    historical facts are undisputed, a court may decide the existence of probable cause as a matter of

6    law. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012); *Peng v. Mei Chin Penghu*,

7    335 F.3d 970, 979-80 (9th Cir. 2003) ("where the material, historical facts are not in dispute, and

8    the only disputes involve what inferences properly may be drawn from those historical facts, it is

9    appropriate for th[e] court to decide whether probable cause existed" at the time of the arrest);

10   *Harper*, 533 F.3d at 1022 ("Where the facts or circumstances surrounding an individual's arrest

11   are disputed, the existence of probable cause is a question for the jury." (citation omitted)).

12         There are no genuine disputes about the historical facts that gave rise to Officer

13   Figueiredo's probable cause determination to arrest Plaintiff for battery under California Penal

14   Code section 243(d). California defines a battery as "any willful and unlawful use of force or

15   violence upon the person of another." Cal. Penal Code § 242; *see also Manni v. City of San

16   Diego*, 2013 WL 6159317, at *4-6 (S.D. Cal. Nov. 25, 2013) (analyzing whether probable cause

17   existed to arrest for battery). It is undisputed that Officer Figueiredo was called to the scene

18   because a 911 caller had seen Mr. Nguyen hurt and bleeding, indicating force had been used

19   against him. DUF ¶¶ 7-8. It is also undisputed that Plaintiff then told Officer Figueiredo that an

20   altercation had taken place between him and Mr. Nguyen and that Officer Figueiredo observed

21   that Mr. Nguyen's hands were bleeding, with large abrasions and lacerations, and a large flap of

22   skin handing from the palm of Nguyen's left hand. *Id.* ¶¶ 21, 24-25. Additionally, it is undisputed

23   that Officer Figueiredo observed an age, height, and weight discrepancy between Nguyen and

24   Plaintiff. *Id.* ¶¶ 21, 23. Specifically, Plaintiff appeared younger than Nguyen, with a clear height

25   and weight advantage: based upon their driver's licenses, Nguyen was 5'5", 110 pounds, and 68

26   years old; Plaintiff was 6'0", 240 pounds, and 52 years old. *Id.* ¶ 23; *see Yousefian*, 779 F.3d at

27   1014 ("A police officer who finds an elderly and infirm man bleeding profusely from a head

28   wound admittedly inflicted by a younger man without significant injuries will have probable cause

United States District Court
Northern District of California

to believe that the latter has committed assault.").  Furthermore, Officer Nguyen provided Officer Figueiredo a summary of his conversation with Mr. Nguyen, who had identified Plaintiff as the one who assaulted him by kicking him in the chest.  DUF ¶¶ 12-13; 17-18; Deposition of Christopher Figueiredo ("Figueiredo Dep.") 17:5-22, Dkt. No. 81-1; Declaration of Christopher Figueiredo ("Figueiredo Decl.") ¶ 2, Dkt. No. 82.  Given this information, an objectively reasonable officer would have concluded that there was a fair probability Plaintiff had committed or was committing a crime.  Plaintiff does not provide evidence to dispute these facts.[11]

Plaintiff's only argument seems to be that Officer Figueiredo did not conduct a thorough enough investigation of the events prior to his arrest.  *See* Opp'n at 12 ("The officers did little, if anything, to investigate Mr. Castro's version of the events . . . .").  According to Plaintiff, he approached Officer Figueiredo, told him Mr. Nguyen was a repeated trespasser and had just attacked and seriously injured him.  *Id.* at 2.  He also told Officer Figueiredo he wanted to make a citizen's arrest.  *Id.*; *see also* Deposition of Gary Castro ("Castro Dep.") 64:24-65:2, Dkt. Nos. 95-96.[12]  But even if Officer Figueiredo ignored Plaintiff's description of the events as Plaintiff asserts (*see* Castro Dep. 62:21-63:5; 70:3-13; 81:20-25), Plaintiff has not articulated how his description of events would have negated Officer Figueiredo's finding of probable cause for Plaintiff's arrest.  Plaintiff's theory seems to be that if Officer Figueiredo had conducted a more thorough investigation then he would have realized that Mr. Nguyen was the initial attacker, not Plaintiff, *see* Opp'n 12-13—but this fact still does not negate Officer Figueiredo's finding of

---

[11] Plaintiff cites a transcript that appears to be a recording of Officer Nguyen's conversation with Mr. Nguyen.  *See* Opp'n at 12; Taxman Decl. ¶ 11 & Ex. 3 (transcript).   Plaintiff contends that this document shows that Mr. Nguyen's account of the events was unreliable.  Opp'n at 12.  Defendants contend the document is "hearsay without exception or exclusion" and lacks foundation and authentication.  Defs.' Objs. at 2, Dkt. No. 106.  The Court agrees with Defendants that this document lacks foundation and authentication, among other things.  Plaintiff provides no context for how he obtained this recording, who transcribed it, etc.  Without more, the Court may not rely on this evidence.  *See Norse*, 629 F.3d at 973 ("While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." (citations omitted)).

[12] Plaintiff again filed this document across two docket numbers.  Dkt. No. 95 contains pages 99 and lower, while Dkt. No. 96 contains deposition pages 100 and greater.

United States District Court
Northern District of California

1    probable cause.  Indeed, "the possible existence of a defense to the offense does not prevent a

2    finding of probable cause."  *Sudderth v. City & Cty. of S.F.*, 2001 WL 764929, at*5-6 (N.D. Cal.

3    2001) (finding probable cause for arresting plaintiff for misdemeanor battery where plaintiff

4    confirmed a physical altercation between her and the victim but claimed she was acting in self-

5    defense); *see also Verdugo v. Manker*, 2009 WL 1972909, at *6 (C.D. Cal. July 6, 2009), *aff'd*,

6    412 F. App'x 937 (9th Cir. 2011) (officer was not required to determine the relative culpability of

7    the two potential assailants before conducting arrest where the totality of the circumstances known

8    to the officer at the time provided probable cause for the arrest).  Without more, Plaintiff has not

9    set forth specific facts showing that there is some genuine issue for trial on his false arrest claim.

10   *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.

11          Accordingly, the Court GRANTS Defendants' summary judgment on Plaintiff's false

12   arrest claim as part of his First Cause of Action.

13          3.    Excessive Force - Fourth Amendment (First Cause of Action)[13]

14          "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in

15   the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

16   under the Fourth Amendment and its 'reasonableness' standard[.]"  *Graham v. Connor*, 490 U.S.

17   386, 395 (1989) (emphasis in original).  "Determining whether the force used to effect a particular

18   seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and

19   quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

20   governmental interest at stake."  *Id.* at 396 (quotation and internal marks omitted).  Stated another

21   way, the Court must "balance the amount of force applied against the need for that force."  *Bryan*

22   *v. MacPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quotation omitted).

23          Because the reasonableness test is not capable of precise definition or mechanical

24   application, its proper application requires careful attention to the facts and circumstances of each

25   _____

26   [13] Defendants only challenge Plaintiff's excessive force claim on the ground that it was reasonable to use the WRAP device; they and the Court also understand Plaintiff's excessive force claim to
27   be premised upon other factual claims (such as allegations Officer Figueiredo dropped Plaintiff, did not seat-belt him, and drove in a dangerous manner); however, Defendants do not move for summary judgment on those claims.  Defendants solely move for adjudication of Plaintiff's
28   WRAP-related excessive force claim.

United States District Court
Northern District of California

1    particular case, including but not limited to (1) the quantum of force—the type and amount of

2    force—used, (2) the severity of the crime at issue, (3) whether the suspect poses an immediate

3    threat to the safety of the officers or others, and (4) whether he is actively resisting arrest or

4    attempting to evade arrest by flight.  *See id.* at 823-26; *Graham*, 490 U.S. at 396.  The

5    "availability of alternative methods of capturing or subduing a suspect" may also be a factor to

6    consider.  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (citing *Chew v.*

7    *Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994)).  These factors are not exclusive; courts must

8    examine the totality of the circumstances in a particular case and consider whatever specific

9    factors may be appropriate— "'whether or not listed in *Graham*.'"  *Mattos*, 661 F.3d at 441

10   (quoting *Bryan*, 630 F.3d at 826).

11        Reasonableness must be judged "from the perspective of a reasonable officer on the scene,

12   rather than with the 20/20 vision of hindsight" and allow "for the fact that police officers are often

13   forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

14   evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490

15   U.S. at 396-97.  Still, "[t]he question is not simply whether the force was necessary to accomplish

16   a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant

17   circumstances."  *Smith*, 394 F.3d at 701 (emphasis in original; quotation omitted).  As the

18   excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions,

19   and to draw inferences therefrom, . . . summary judgment . . . in excessive force cases should be

20   granted sparingly."  *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

21        Viewing the facts in the light most favorable to Plaintiff, the Court cannot find as a matter

22   of law that Officer Figueiredo did not violate Plaintiff's right to be free from excessive force.

23   There are factual disputes concerning many of the *Graham* factors.  First, as to the quantum of

24   force used, the parties dispute how much force was applied, with Defendants contending the

25   officers applied a WRAP only to Plaintiff's legs (Mot. at 12), and Plaintiff asserting the device

26   was a full body WRAP restraint (Opp'n at 14; Castro Dep. 109:6-17).  The exact extent of the

27   restraint and how the officers applied the WRAP device is uncertain.  *See Wilson v. Tran*, 2015

28   WL 3826844, at *3 (N.D. Cal. June 19, 2015) (no summary judgment where "dispute as to how

United States District Court
Northern District of California

18

1    much force was used" and "based upon admissible sworn statements by Plaintiff.").

2          Second, there is a dispute as to whether Plaintiff actively resisted the officers.  Defendants

3    assert Plaintiff "interfere[d] with law enforcement duties" by "not getting into the patrol car and

4    resisting officers' efforts to place him in the car."  Mot. at 12.  They argue the WRAP was needed

5    in light of the "delaying effect of [Plaintiff's] malingering[.]"  Reply at 3.  On the other hand,

6    Plaintiff argues he was suffering from severe pain and health issues that made him physically

7    unable to enter the police vehicle as the officers had directed him.  Opp'n at 14-16.  Thus, he

8    argues that when the officers decided to put him in the WRAP device, he was not resisting, but

9    was "suffering from serious medical conditions, causing him to lose control of his gross motor

10   functions" after which he "essentially became unresponsive."  *Id.* at 16; *see* Castro Dep. 100:22-

11   103:2; 104:23-105:5; 107:22-110:2; Castro Decl. ¶¶ 35-38; 42-44.  Although Defendants are

12   correct that Plaintiff has provided no medical evidence that he lost control over his gross motor

13   functions, the Court cannot find as a matter of law that Plaintiff was actively resisting the Officers

14   in a way that made the use of the WRAP device objectively reasonable.  It is too uncertain what

15   actually happened—what Plaintiff specifically expressed to the officers about his condition and

16   how the officers responded—to be able to determine that the use of WRAP device was appropriate

17   under the totality of the circumstances.  *See Joseph v. Dillard's, Inc.*, 2009 WL 5185393, at *7 (D.

18   Ariz. Dec. 24, 2009) ("There is also a dispute about whether Plaintiff was resisting arrest when

19   Villarreal forced her head toward the ground and how much force he used in doing so.  A

20   reasonable jury could find that Plaintiff did not attempt to assault Villarreal, that she was not

21   resisting arrest, and that Villarreal's use of force was therefore unreasonable under the

22   circumstances.").  Given the foregoing factual disputes, the Court cannot find Officer Figueiredo's

23   use of force objectively reasonable as a matter of law.

24          Where the evidence indicates a potential violation of a constitutional right, the Court

25   proceeds to the second prong of the qualified immunity analysis: whether the contours of the right

26   were sufficiently clear that a reasonable official would have understood what he is doing violates

27   that right.  *Mattos*, 661 F.3d at 442.  While Defendants are correct that there are few cases directly

28   on point regarding when use of a WRAP device equates to excessive force, this puts too fine a

United States District Court
Northern District of California

United States District Court
Northern District of California

1  point on the matter: the right to be free from excessive force and the general principle that "force

2  is only justified when there is a need for force" have been clearly established for some time.

3  *Blankenhorn*, 485 F.3d at 481 ("In assessing the state of the law at the time of [defendant's] arrest,

4  we need look no further than *Graham*'s holding . . . ."); *see also Mattos*, 661 F.3d at 441 ("[T]here

5  are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh

6  their way through the factbound morass of reasonableness." (quotations omitted)).

7         Here, there are triable issues of fact precluding a grant of qualified immunity for Officer

8  Figueiredo because under Plaintiff's version of the facts, it would be clear to a reasonable officer

9  that he was not justified in restraining an individual who is not resisting officer commands but is

10  suffering from medical issues that make him unable to comply with such commands. *Id.*  It is

11  possible that a jury will not believe Plaintiff's version of the events, but at this point the Court

12  cannot find Officer Figueiredo's use of the WRAP device on Plaintiff objectively reasonable or

13  that a reasonable officer would have believed that such force was needed under the circumstances.

14  Accordingly, qualified immunity is not warranted at this time. *See also Espinosa v. City & Cty. of*

15  *S.F.*, 598 F.3d 528, 532 (9th Cir. 2010) (premature to find qualified immunity where there

16  remained unresolved issues of fact regarding whether officers violated the plaintiff's Fourth

17  Amendment rights and whether officers' belief in the legality of their actions was reasonable).

18         Accordingly, the Court DENIES Defendants' summary judgment on Plaintiff's excessive

19  force claim as part of his First Cause of Action related to the officers' use of the WRAP device.

20         4.    First Amendment Retaliation (Second Cause of Action)

21         "Official reprisal for protected speech 'offends the Constitution [because] it threatens to

22  inhibit exercise of the protected right[';] . . . the First Amendment prohibits government officials

23  from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking

24  out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (first alteration in original) (quoting

25  *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)) (additional citation omitted).  To prevail

26  under § 1983 for such retaliation, "a plaintiff must prove: (1) he engaged in constitutionally

27  protected activity; (2) as a result, he was subjected to adverse action by the defendant that would

28  chill a person of ordinary firmness from continuing to engage in the protected activity; and (3)

20

1    there was a substantial causal relationship between the constitutionally protected activity and the

2    adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted)

3    (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).  A plaintiff must

4    ultimately "'prove the elements of retaliatory animus as the cause of injury,' with causation being

5    'understood to be but-for causation.'"  *Lacey v. Maricopa Cty.*, 693 F.3d 896, 917 (9th Cir. 2012)

6    (quoting *Hartman*, 547 U.S. at 260); *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01

7    (9th Cir. 2008) ("Plaintiff must ultimately prove first that Defendants took action that would chill

8    or silence a person of ordinary firmness from future First Amendment activities. . . . The second

9    requirement is that . . . Plaintiff must ultimately prove that Defendants' desire to cause the chilling

10   effect was a but-for cause of Defendants' action." (quotation and edits omitted)).

11        Plaintiff alleges Officer Figueiredo retaliated against him by (1) using excessive force and

12   (2) "recommending that Plaintiff be criminally prosecuted[.]"  SAC ¶ 72.  Plaintiff asserts that

13   "Officer Figueiredo's use of force against Plaintiff[] had nothing to do with transport and safety,

14   but had everything to do with the officer's frustration and punishment of the Plaintiff for

15   requesting and receiving necessary and proper medical care for the injuries he sustained when he

16   was assaulted back at the scene of the crime."  Opp'n at 17.  Plaintiff's retaliatory prosecution

17   claim is based on the fact that while he "was lying down on the concrete pavement, waiting for

18   Officer Leon to arrive with the WRAP and helmet, Officer Figueiredo stated, among other

19   consequences, that he was going to ruin Mr. Castro's life and make sure[] that Plaintiff was

20   criminally charged."  *Id.*  Plaintiff asserts the retaliatory animus is found in Officer Figueiredo's

21   incident report, where he states that "due to the delays caused by ARR/Castro, approximately eight

22   hours elapsed between the initiation of this investigation and the booking of ARR/Castro."  *Id.*

23   Two days later, a complaint was filed that charged Plaintiff with a violation of California Penal

24   Code section 69, deterring and preventing Officer Figueiredo from performing a duty imposed

25   upon him by law.  *Id.*

26        Defendants on the other hand point out that the only direct evidence as to Officer

27   Figueiredo's actions is his testimony that his "physical contact with Plaintiff— moving him down

28   the hospital hallway; placing in the wheelchair; and transitioning from the wheelchair to the patrol

United States District Court
Northern District of California

21

United States District Court
Northern District of California

1   car; and the WRAP—was for purposes of detainee transport and safety." Mot. at 13.  They further

2   note that "[t]here is no evidence Plaintiff was prosecuted by Officer Figuerido" and that "Officer

3   Figueiredo was unaware Plaintiff had been criminally charged."  *Id.*  Finally—and apparently in

4   an attempt to shield Officer Figueiredo from a retaliatory arrest claim—they assert that Officer

5   Figueiredo had probable cause to arrest Plaintiff.  *Id.*

6                   a.       *Retaliatory Force Claim*

7          First, as to the retaliatory force claim, while Defendants are correct that the only direct

8   evidence about Officer Figueiredo's motives is his testimony, Plaintiff is also correct that other

9   evidence about Officer Figueiredo's actions may disclose his motive or animus in acting as he did.

10  *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999) ("Intent to

11  inhibit speech, which 'is an element of the claim,' . . . can be demonstrated either through direct or

12  circumstantial evidence." (quotation and citation omitted)).  If Plaintiff's version of events is

13  believed by a jury, he continuously cried out in pain and asked for further medical attention and

14  various accommodations to meet his health issues.[14]  Castro Decl. ¶¶ 21, 39; Castro Dep. 93:2-5;

15  95:13-20; 96:24-97:2; 100:22-103-14.  He also observed Officer Figueiredo becoming "upset" and

16  "frustrated" and "screaming" at him.  Castro Decl. ¶ 29; Castro Dep. 100:24-25; 103:12-13.  As

17  Plaintiff was "trying to explain" and "crying and begging[,]" Officer Figueiredo and the other

18  officer "forcibly" threw Plaintiff in the back seat of the police vehicle, and Officer Figueiredo "got

19  mad" and started punching Plaintiff in the shoulder.  Castro Dep. 100:22-103-14.  Given this

20  testimony, a reasonable jury could find that Officer Figueiredo's actions were done in retaliation

21  for Plaintiff's constant requests and expressions of need for medical attention and that Officer

22  Figueiredo used force in an attempt to chill that speech.  *Estate of Hernandez-Rojas ex rel.*

23  *Hernandez v. United States (Hernandez)*, 62 F. Supp. 3d 1169, 1179 (S.D. Cal. 2014) ("The

24  retaliation for [plaintiff's] utterances and cries is demonstrated beginning with . . . the continuing

25  use of physical force, being tasered multiple times while face down on the ground, handcuffed,

26

27  ---

    [14] Plaintiff alleges that his "conduct in asserting his right to receive medical care constitutes
protected activity pursuant to the First Amendment[.]" SAC ¶ 73.  Defendants have not

28  challenged this assertion.

1   surrounded by multiple officers.  This provides a reasonable inference that plaintiffs' protected act

2   was a substantial factor underlying defendants' adverse acts and a jury could so find."); *Holland v.*

3   *City of S.F.*, 2013 WL 968295, at *5 (N.D. Cal. Mar. 12, 2013) ("A reasonable juror could infer . .

4   . that [plaintiff] would not have been . . . subjected to excessive force had it not been for her

5   persistent questioning of the officers . . . .").  Taking the facts in the light most favorable to

6   Plaintiff, a reasonable jury could conclude that Officer Figueiredo's use of force "would chill or

7   silence a person of ordinary firmness from future First Amendment activities" and his desire to use

8   the chilling effect was a substantial cause of his actions.  *See Dietrich*, 548 F.3d at 900-01.

9       Defendants contend that, even if the Court finds a potential constitutional violation for

10  retaliatory force, Officer Figueiredo is entitled to qualified immunity.  Mot. at 19; Reply at 7.

11  Qualified immunity, however, is not appropriate given the disputed facts remaining around

12  Plaintiff's speech and Officer Figueiredo's reactions.  If a jury believes Plaintiff's version of

13  events, under those circumstances, a reasonable officer in Officer Figueiredo's position would

14  have understood that his conduct violated Plaintiff's First Amendment rights.  Indeed, "[p]olice

15  officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate

16  against individuals for their protected speech."  *Ford v. City of Yakima*, 706 F.3d 1188, 1195-96

17  (9th Cir. 2013) (citing *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990)

18  (additional citation omitted)).  As "Ninth Circuit precedent has long provided notice to law

19  enforcement officers that it is unlawful to use their authority to retaliate against individuals for

20  their protected speech," Officer Figueiredo is not entitled to qualified immunity for Plaintiff's

21  retaliatory force claim at this time.  *Hernandez*, 62 F. Supp. 3d at 1179.  Accordingly, the Court

22  DENIES Defendants summary judgment on Plaintiff's retaliatory force claim.

23              *b.*    *Retaliatory Prosecution Claim*

24      As to Plaintiff's "retaliatory prosecution" claim, Plaintiff has set forth no specific facts

25  showing that there is some genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at

26  250.  While the threat and act of prosecution may chill a person of ordinary firmness from

27  continuing to engage in the protected activity, Plaintiff has not shown that Officer Figueiredo

28  made his alleged "recommend[ation] that Plaintiff be criminally prosecuted[,]" SAC ¶ 72,

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "because of" or "as a result of" Plaintiff's speech.  *See Blair*, 608 F.3d at 544; *Ford*, 706 F.3d at

2    1194 ("[T]he evidence must be sufficient to establish that the officers' desire to chill Ford's

3    speech was a but-for cause of their conduct. In other words, would Ford have been booked and

4    jailed, rather than cited and arrested, but for the officers' desire to punish Ford for his speech?").

5    The question here is thus whether Officer Figueiredo would have made the recommendation to

6    prosecute Plaintiff regardless of Plaintiff's speech.

7            Plaintiff has put forward no specific facts to show that he was charged with battery, Cal.

8    Penal Code § 243(d), and elder abuse, *id.* § 368(c), as a result of his speech—or, for that matter,

9    Officer Figueiredo's desire to punish Plaintiff's speech.  All the evidence indicates Officer

10   Figueiredo would have arrested Plaintiff on these grounds regardless of Plaintiff's speech.  *See*

11   *Pinard*, 467 F.3d at 770 (recognizing that even "[i]f the plaintiff establishes the elements of a

12   retaliation claim, 'the government can escape liability by showing that it would have taken the

13   same action even in the absence of the protected conduct.'" (quotation omitted)); *Garcia v. City of*

14   *Santa Clara*, 2015 WL 5299460, at *7 (N.D. Cal. Sept. 9, 2015) (recognizing same where plaintiff

15   alleged officer arrested him as retaliation for criticizing and challenging the officer's authority to

16   evict occupants of a hotel room who refused to leave).  As to Plaintiff's claim that he was charged

17   with violations of Penal Code sections 69 and 148(a)(1) for resisting, deterring, and otherwise

18   preventing Officer Figueiredo from performing his duties, Plaintiff has again not raised specific

19   facts to show that Officer Figueiredo's desire to punish Plaintiff for his speech is the but-for cause

20   of these charges.  Indeed, Defendants have provided evidence demonstrating that Plaintiff was

21   acting in a way that, regardless of his speech, provided grounds for charging him with violations

22   of these Penal Code sections.  In other words, even if a jury believed Plaintiff's version of events,

23   it would have no evidence on which to find that Officer Figueiredo charged Plaintiff with these

24   Penal Code violations because of Plaintiff's speech as opposed to Plaintiff's other actions.

25   Without more, Plaintiff has not raised specific facts showing his speech caused Officer Figueiredo

26   to retaliate by recommending Plaintiff's prosecution.  Accordingly, the Court GRANTS

27   Defendants summary judgment on the retaliatory prosecution claim.

28   //

5.      Substantive Due Process (Ninth Cause of Action)

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  This clause guarantees both procedural and substantive due process, protecting individuals against the deprivation of a liberty or property interest by the government.  "A substantive due process inquiry focuses on 'what' the government has done," while a procedural due process analysis focuses upon "'how and when' the government did it."  *Amsden v. Moran*, 904 F.2d 748, 753-54 (1st Cir. 1990).

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government."  *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1110 (9th Cir. 2010) (quoting *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)).  Indeed, as the Court has previously noted, "the Ninth Circuit has recognized 'a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.'"  *Castro v. City of Union City*, 2015 WL 3799521, at *4 (N.D. Cal. June 18, 2015) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc)).  To state such a claim, Plaintiff must point to evidence that supports at least one of the following two propositions: "(1) Defendants continued their investigation of [Plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."  *Devereaux*, 263 F.3d at 1076 (citation omitted).  "The *Devereaux* test envisions an investigator whose unlawful motivation is illustrated by her state of mind regarding the alleged perpetrator's innocence, or one who surreptitiously fabricates evidence by using coercive investigative methods."  *Costanich*, 627 F.3d at 1111.  "These are circumstantial methods of proving deliberate falsification."  *Id.*

*Devereaux*, however, imposes a "stringent test" requiring a showing of more than mere carelessness in handling the investigation.  *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003).  To establish a substantive due process violation, "a plaintiff must show both a deprivation of liberty and conscience shocking behavior by the government."  *Brittain*, 451 F.3d at 991 (footnote

25

1    omitted).  The Ninth Circuit has held that in the context of a § 1983 suit against police officers for

2    a due process violation, official conduct "shocks the conscience" when the officer "either

3    consciously or through complete indifference disregards the risk of an unjustified deprivation of

4    liberty." *Tatum v. Moody*, 768 F.3d 806, 820-21 (9th Cir. 2014) (quoting *Gantt v. City of L.A.*,

5    717 F.3d 702, 707 (9th Cir. 2013)).  Thus, where evidence of conscious disregard is unavailable, a

6    plaintiff may establish that the defendant acted with "deliberate indifference to or reckless

7    disregard for an accused's rights[,]" which is "consistent with the 'shocks the conscience'

8    substantive due process standard." *Gantt*, 717 F.3d at 708; *Tennison v. City & Cty. of S.F.*, 570

9    F.3d 1078, 1089 (9th Cir. 2009) ("[W]here state officials have the opportunity to deliberate

10   various alternatives prior to selecting a course of conduct, such action violates due process if it is

11   done recklessly." (quotation omitted)).

12          Plaintiff reiterates that he bases his substantive due process claim on the fact that he "has

13   the constitutional right not to be subjected to criminal charges, on the basis of false evidence, that

14   was deliberately fabricated by the government." Opp'n at 18.  He explains that while he "was in

15   police custody, Officer Figueiredo was made aware of facts, circumstances, and evidence that

16   should have quickly exonerated Plaintiff from any criminal wrong doing." *Id.*  Plaintiff's claims

17   thus fall entirely under the first *Devereaux* prong, i.e., that Officer Figueiredo continued his

18   investigation of Plaintiff despite the fact that he knew or should have known that Plaintiff was

19   innocent.  Ultimately, however, Plaintiff has presented no evidence on which a reasonable jury

20   could find that Officer Figueiredo knew or should have known that Plaintiff was innocent.  *See,*

21   *e.g.*, *Hernandez v. Kennedy*, 595 F. App'x 673, 675 (9th Cir. 2014) ("The defect in [the plaintiff]'s

22   'shock the conscience[]' . . . substantive due process claim is that [his] evidence did not establish

23   that Officer Kennedy knew or should have known that he was innocent." (citations omitted)).

24          First, as to whether Officer Figueiredo acted with "conscious" disregard for Plaintiff's

25   rights, the only evidence Plaintiff presents that would have perhaps indicated to Officer Figueiredo

26   that Plaintiff was innocent was Plaintiff's own protestations that Mr. Nguyen was the aggressor,

27   not Plaintiff.  Such protestations are generally insufficient alone to establish a substantive due

28   process claim.  *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (rejecting that "a sheriff

United States District Court
Northern District of California

26

executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, . . . . [or] to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury."); *Lawrence v. City of Chino*, 2006 WL 4811344, at *5 (C.D. Cal. Aug. 24, 2006) ("[H]aving once determined that there is probable cause to arrest, an officer should not be required to reassess his probable conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car." (quoting *Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986)); *see also Rivera v. Cty. of L.A.*, 745 F.3d 384, 391-92 (9th Cir. 2014) (detention of a suspect in the face of claims of innocence does not amount to a due process violation unless the suspect is held for a long enough period of time without adequate procedures).  There is no other evidence Officer Figueiredo consciously disregarded the risk to Plaintiff's rights.

As to whether Officer Figueiredo acted with "complete indifference" to the risk, Plaintiff's primary argument again appears to be that Officer Figueiredo conducted an inadequate investigation.  While Plaintiff points to a variety of alternative actions Officer Figueiredo could have done differently at the scene, *see* Opp'n at 18-20, Plaintiff has not presented any evidence to show that Officer Figueiredo acted recklessly in focusing his investigation on Plaintiff.  As Defendants assert: "[b]efore transporting Plaintiff to Fremont Jail, Officer Figueiredo knew the following: (1) there had been an injured victim (Sau Nguyen); (2) none of the onlookers at the scene came forward as witnesses; (3) the victim identified Plaintiff as his attacker and detailed the assault; (4) the victim bore physical marks consistent with injuries; and (5) that Plaintiff asserted his innocence."  Mot. at 14.  These facts are undisputed and show that Officer Figueiredo did not act with complete indifference to Plaintiff's rights as he gathered and considered all of these facts before arresting Plaintiff.  Further, the Court has already found Officer Figueiredo had probable cause for the arrest.

While Plaintiff notes that Officer Figueiredo could have done more, *Devereaux* does not require the Officer's investigation to "ensure an error-free result[.]"  263 F.3d at 1076-77 (finding plaintiff's evidence that defendants failed "to adhere to established guidelines and policies

United States District Court
Northern District of California

1   concerning the questioning of child witnesses," and failed "to conduct and monitor []

2   interrogations in a manner that would ensure the veracity of the information obtained" were

3   "insufficient to support a deliberate-fabrication-of-evidence claim"); *see also Gausvik*, 345 F.3d at

4   817 ("[Inaccuracy] claims do not show[the state employee] continued the investigation despite

5   knowing [the subject of a child abuse investigation] was innocent or that he used investigative

6   techniques that he knew would yield false information. . . . While [the state employee's] affidavit

7   may have been careless or inaccurate, it does not satisfy *Devereaux*'s stringent test."); *cf.*

8   *Costanich*, 627 F.3d at 1111 (criticizing district court for reading *Devereaux* "too narrowly" where

9   plaintiff had set forth circumstantial evidence reflecting that investigator had deliberately

10   misquoted and misrepresented witness statement).  Plaintiff has provided no circumstantial

11   evidence that indicates Officer Figueiredo was deliberately or recklessly indifferent to Plaintiff's

12   rights, such as evidence that witnesses attempted to tell Officer Figueiredo that Plaintiff was

13   innocent but Officer Figueiredo ignored them, or that Mr. Nguyen's account of the events was

14   obviously unreliable or contradictory in materially significant ways that Officer Figueiredo would

15   have known.[15]  In light of the undisputed evidence, no reasonable jury could find that Officer

16   Figueiredo knew or should have known that Plaintiff was innocent such that Plaintiff's arrest and

17   subsequent confinement violated his substantive due process rights.

18        Accordingly, the Court GRANTS Defendants summary judgment on Plaintiff's substantive

19   due process claim (Ninth Cause of Action).

20        6.    Summary

21        In sum, the Court finds that Defendants are entitled to summary judgment on Plaintiff's

22   Fourth Amendment unlawful arrest claim (First Cause of Action), First Amendment retaliation

23   claim for retaliatory prosecution (Second Cause of Action), and Fourteenth Amendment

24   substantive due process claim (Ninth Cause of Action).  However, the Court finds there are triable

25

26   [15] Plaintiff noted in his declaration that "several onlookers tr[ied] to tell the police what had
     happened but they refused to take any witness statements."  Castro Decl. ¶ 16.  But Plaintiff
27   provides no evidence about what they said or to which police officers the onlookers tried to speak
     with.  Nor does Plaintiff provide any evidence that there in fact were any witnesses to the actual
28   altercation between him and Mr. Nguyen or that any of those people who tried to speak with the
     police were in fact witnesses to the altercation.

issues of fact as to Plaintiff's Fourth Amendment excessive force claim (First Cause of Action) and First Amendment retaliation claim for retaliatory use of force (Second Cause of Action). Finally, as "Plaintiff does not oppose Defendant's [sic] Request for Summary Adjudication on Plaintiff's Third Cause of Action for Municipal and Supervisory Liability[,]" Opp'n at 23, the Court GRANTS the City summary judgment on Plaintiff's Municipal Liability claims (Third Cause of Action).

**B.     State Law Claims**

        1.     <u>Malicious Prosecution (Seventh Cause of Action)</u>

      Before addressing the merits of Plaintiff's Malicious Prosecution claim, the Court first notes a dispute between the parties about the nature of this claim—specifically, whether it is based on state law or federal law. Plaintiff's Complaint does not specifically indicate whether he intended the claim to be based on state law or under § 1983. *See* SAC ¶¶ 103-13. Defendants construed the claim as one based on California law and argued for summary judgment of state law grounds. Mot. at 23-25. Meanwhile, Plaintiff, for the first time in his Opposition, indicates he brings this claim under federal law, citing to case law under § 1983. Opp'n at 23-24. At the same point, Plaintiff cites California case law to support various elements of this claim. *Id.*

      "To prove a claim of malicious prosecution in California, the plaintiff must prove that the underlying prosecution: '(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.'" *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006) (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal. 3d 863 (1989)). Similarly, to prevail on a claim for malicious prosecution under § 1983, a plaintiff must prove the defendants prosecuted him (1) with malice, (2) without probable cause, (3) for the purpose of denying him equal protection or another specific constitutional right, and (4) that institution of criminal proceedings have terminated in favor of the accused. *See Lacey*, 693 F.3d at 919. "Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir.

1    2002)).  Indeed, "the presumption of prosecutorial independence does not bar a subsequent § 1983

2    claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly

3    provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in

4    wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal

5    proceedings." *Id.* at 1067 (citations omitted).

6          Regardless of whether Plaintiff brings his malicious prosecution claim under state or

7    federal law, he cannot maintain it for trial as he has failed to raise specific facts showing that

8    probable cause was absent for the charges against him.  *See Conrad*, 447 F.3d at 768 ("When . . .

9    the claim of malicious prosecution is based upon the initiation of a criminal prosecution, the

10   question of probable cause is whether it was objectively reasonable for the defendant . . . to

11   suspect the plaintiff . . . had committed a crime." (quoting *Ecker v. Raging Waters Grp., Inc.*, 87

12   Cal. App. 4th 1320, 1331 (2001)).  As noted above, Officer Figueiredo had probable cause to

13   arrest Plaintiff for battery, and given that fact, combined with Mr. Nguyen's advanced age, there

14   was likewise probable cause to charge Plaintiff with a violation of Penal Code section 368(c) for

15   Elder Abuse.  *See* Cal. Penal Code § 368 (making it unlawful for "[a]ny person who knows or

16   reasonably should know that a person is an elder. . . [to] willfully cause[] or permit[] any elder or

17   dependent adult to suffer, or inflict[] thereon unjustifiable physical pain . . .").

18         Similarly, as to the charges about interfering with Officer Figueiredo's police duties,

19   Plaintiff again has not shown that probable cause was lacking for those charges.  While Plaintiff

20   claims he had a medical condition that caused his delaying and obstructionist reactions of Officer

21   Figueiredo's demands, the two hospital visits confirmed to Officer Figueiredo that Plaintiff was

22   cleared of any medical issues, and Plaintiff has not otherwise provided any evidence confirming

23   that he in fact suffered from a medical condition that night.  Plaintiff has not shown that Officer

24   Figueiredo knowingly provided misinformation to the prosecutors or concealed exculpatory

25   evidence from them.  Consequently, Plaintiff has put forward no evidence on which a reasonable

26   jury could find probable cause was lacking to charge Plaintiff with these violations.  *Lassiter v.*

27   *City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009) ("[P]robable cause is an absolute

28   defense to malicious prosecution." (citations omitted)).

United States District Court
Northern District of California

1    As Plaintiff is unable to support this critical element of his malicious prosecution claim,

2    the Court GRANTS Defendants' Motion for Summary Judgment on this claim.

3         2.    <u>Section 51.7 Claim (Fifth Cause of Action)</u>

4    California Civil Code section 51.7 protects the "right to be free from any violence, or

5    intimidation by threat of violence, committed" against "persons or property" based a characteristic

6    such as sex, race, color, religion, ancestry, national origin, disability, medical condition, marital

7    status, or sexual orientation.  Cal. Civ. Code §§ 51.7(a), 51(b) & (e).  To state a claim under

8    section 51.7, the plaintiff must allege that: (1) the defendant threatened or committed violent acts

9    against the plaintiff or his or her property; (2) a motivating reason for the defendant's conduct was

10   his or her perception of the plaintiff's protected characteristic; (3) the plaintiff was harmed; and

11   (4) the defendant's conduct was a substantial factor in causing the plaintiff harm.  *Austin B. v.*

12   *Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007).

13   Plaintiff brings a claim under section 51.7 contending Officer Figueiredo "violated

14   Plaintiff's right to be free from violence, threat of violence or intimidation by threatening and

15   committing violent acts against the Plaintiff, on the basis of Plaintiff's medical condition."  SAC ¶

16   90.  He alleges Officer Figueiredo's violent conduct "was motivated by [his] perception of the

17   Plaintiff's protected characteristic, to wit, his medical condition."  *Id.* ¶ 92.  Plaintiff further

18   contends the City is liable for Officer Figueiredo's conduct under a theory of respondeat superior,

19   pursuant to section 815.2 of the California Government Code.  *Id.* ¶ 95.  In their Motion,

20   Defendants argue, among other things, that Plaintiff's section 51.7 must fail because "Plaintiff

21   cannot premise a Section 51.7 upon a medical condition that did not exist."  Mot. at 25.

22   Section 51.7 provides in relevant part:

23        All persons within the jurisdiction of this state have the right to be
          free from any violence, or intimidation by threat of violence,
24        committed against their persons or property because of political
          affiliation, or on account of any characteristic **listed or defined in**
25        **subdivision (b) or (e) of Section 51**, or position in a labor dispute,
          or because another person perceives them to have one or more of
26        those characteristics. The identification in this subdivision of
          particular bases of discrimination is illustrative rather than
27        restrictive.

28   Cal. Civ. Code § 51.7(a) (emphasis added).  Section 51(e) lists "medical condition" as one of

United States District Court
Northern District of California

31

those characteristics protected by section 51.7(a) and notes that this term "has the same meaning

as defined in subdivision (i) of Section 12926 of the Government Code." *Id.* § 51(e)(3).  Section

12926 defines "Medical condition" as "either of the following:"

> (1) Any health impairment related to or associated with a diagnosis of cancer or a record or history of cancer.

> (2) Genetic characteristics. For purposes of this section, "genetic characteristics" means either of the following:

> (A) Any scientifically or medically identifiable gene or chromosome, or combination or alteration thereof, that is known to be a cause of a disease or disorder in a person or his or her offspring, or that is determined to be associated with a statistically increased risk of development of a disease or disorder, and that is presently not associated with any symptoms of any disease or disorder.

> (B) Inherited characteristics that may derive from the individual or family member, that are known to be a cause of a disease or disorder in a person or his or her offspring, or that are determined to be associated with a statistically increased risk of development of a disease or disorder, and that are presently not associated with any symptoms of any disease or disorder.

Cal. Gov't Code § 12926(i).

Plaintiff has not shown that he was suffering from a medical condition that provides a

cognizable basis for relief under section 51.7.  First, Plaintiff provided no evidence to show that he

indeed suffered from a medical impairment on the night of his arrest, and as Defendants point out,

Plaintiff was medically cleared after each of his two hospital visits.  Second, Plaintiff provides no

evidence to show his purported health impairment that evening falls under one of the medical

conditions listed in Section 12926 of the Government Code.  Even if Plaintiff had provided such

evidence, he has provided no evidence that Officer "Figueiredo used unreasonable force against

Plaintiff because of his medical condition."  Mot. at 25.  In other words, there is no evidence

Officer Figueiredo took the actions he did because he was biased against or had an animus against

Plaintiff's medical condition.  *See, e.g., Lucas v. City of Visalia*, 2013 WL 1915854, at *21 (E.D.

Cal. May 8, 2013) (granting summary judgment where there was no evidence the officer's

motivation in using her taser against the plaintiff was based on animosity or bias against

individuals with seizure disorders); *Austin B.*, 149 Cal. App. 4th at 881 (affirming trial court's

nonsuit grant where "there was no evidence that [the defendant] took the alleged actions because

1    he was biased against or had an animus against disabled children."). Without more, there is not

2    enough evidence upon which a jury could properly find a verdict for Plaintiff on this claim.

3    *Anderson*, 477 U.S. at 251. Because Plaintiff has not shown he can maintain his section 51.7

4    against Officer Figueiredo, the City likewise cannot be held vicariously liable. *Lucas*, 2013 WL

5    1915854, at *22 n.22 (citing *J.P. v. City of Porterville*, 801 F. Supp. 2d 965, 990 n.25 (E.D. Cal.

6    2011); *Lathrop v. Healthcare Partners Med. Grp.*, 114 Cal. App. 4th 1412, 1423 (2004)).

7              Accordingly, the Court GRANTS Defendants summary judgment on this claim.

8                                               **CONCLUSION**

9              Based on the analysis above, the Court **GRANTS IN PART** and **DENIES IN PART**

10   Defendants' Motion for Summary Judgment as follows:

11            (1) The Court **GRANTS** Defendants summary judgment on Plaintiff's Fourth Amendment

12                 unlawful arrest claim (First Cause of Action), First Amendment retaliation claim for

13                 retaliatory prosecution (Second Cause of Action), and Fourteenth Amendment

14                 substantive due process claim (Ninth Cause of Action).

15            (2) However, there are triable issues of fact as to Plaintiff's Fourth Amendment excessive

16                 force claim (First Cause of Action) and First Amendment retaliation claim for

17                 retaliatory use of force (Second Cause of Action), and consequently the Court

18                 **DENIES** Officer Figueiredo summary judgment on these claims.

19            (3) Additionally, as Plaintiff does not oppose it, the Court **GRANTS** the City summary

20                 judgment on Plaintiff's Third Cause of Action for Municipal and Supervisory Liability.

21            (4) Finally, the Court **GRANTS** Defendants summary judgment on Plaintiff's malicious

22                 prosecution claim (Seventh Cause of Action) and California Civil Code section 51.7

23                 claim (Fifth Cause of Action).

24            **IT IS SO ORDERED.**

25

26   Dated: April 19, 2016

27                                                         _____

28                                                         MARIA-ELENA JAMES
                                                           United States Magistrate Judge

*United States District Court*
*Northern District of California*